Lisa ELKINS, Administratrix of the estate of Paul Dennis Elkins, Deceased *v.* ARKLA, INC.

92-1090                                                849 S.W.2d 489

Supreme Court of Arkansas
Opinion delivered March 15, 1993

*The Lowber ·Hendricks Law Firm, P. A.*, by: *Lowber Hendricks*, for appellant.

*Fleming, Elrod & Green*, by: *Gill Wallace Clayton*, for appellee.

DAVID NEWBERN, Justice. This is a wrongful death case. Lisa Elkins, the appellant, brought the action as administratrix of the estate of her deceased husband, Paul Elkins. Paul Elkins was employed by Daniel Utility Construction Co. (Daniel) which had contracted with the appellee, Arkla, Inc., (Arkla) to lay a pipe. He died when a 10-foot deep ditch in which he was working collapsed, causing him to be asphyxiated. Arkla moved for summary judgment on the ground that Daniel, its independent contractor, was responsible for supervision of the job and Arkla owed no duty to a Daniel employee to see to it that the work was done safely. Summary judgment was awarded to Arkla. The question before us is whether there was a remaining genuine issue of material fact which should have precluded summary judgment. Ark. R. Civ. P. 56(c). We hold there was.

The question of duty owed by one person to another is ordinarily one of law. *Lovell* v. *St. Paul Fire & Marine Ins. Co.*, 310 Ark. 791, 839 S.W.2d 222 (1992). When, however, the matter of a legal duty is the subject of a contract which is ambiguous as to the parties' intent, a question of fact is presented. *Tribble* v. *Lawrence*, 239 Ark. 1157, 396 S.W.2d 934 (1965); *Manhattan Factoring Corp.* v. *Orsburn*, 238 Ark. 947, 385 S.W.2d 785 (1965).

Even though the owner of a construction project hires an independent contractor to do the work, the owner may retain the right and duty to supervise to the extent that it becomes responsible for injury resulting from negligence in performance of the work. The Restatement (Second) of Torts § 414 (1965), provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with ·reasonable care.

As Comment C to that section states,

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. *There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.* [Emphasis added]. .

Arkla's contention is that the contract in this case gave it authority to supervise the work only in the sense that Arkla could see to it that the results of the work were satisfactory and that the day-to-day supervisory responsibility of the manner of construction of the pipeline was left to Daniel. Ms. Elkins contends the contract gave Arkla the right and duty to supervise the work not only as to results but as to the manner of achievement.

Here is a description of some of the contract terms. Under section 1.09 C, an engineer or inspector, representing Arkla, is given authority "to require the removal of any employee of [Daniel] who, in his opinion, is considered incompetent or not qualified to perform his work in a satisfactory manner." Section 1.15 B provides the engineer or inspector, when giving instructions "shall have authority to make minor changes in the work, not involving extra cost, and not inconsistent with the purposes of the work, . . . ." Section 1.22 provides the contract may be terminated upon seven days notice if Daniel "fails to supply enough properly skilled workmen or proper equipment and materials" or "persistently disregard laws, ordinances or the

instruction of the Engineer or Inspector." Section 1.39 provides "[t]he Engineer shall have direct supervision of Inspectors whose duty it shall be to see that the work is done properly and in accordance with the Contract Documents." Section 1.38 provides:

> The Engineer or Inspector shall have general supervision and direction of the work. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the Contract. He shall also have authority to reject all work and materials which do not conform to the Contract.

As can be seen, some of the provisions seem to support Arkla's argument that its supervisory authority was limited to saying when it was and was not satisfied with results as the work went along. Yet other provisions, particularly Section 1.38, seem to give Arkla general authority to supervise the details of the work.

In other cases we have found that a construction contract with an independent contractor presented a question of fact with respect to the duty to supervise. In *Erhart* v. *Hummonds*, 232 Ark. 133, 334 S.W.2d 869 (1960), the contract was very similar to the one here. It contained the same language as Section 1.38, giving general supervisory authority to a firm of architects to supervise an independent construction contractor on behalf of the owner. We held that a question of fact as to the assignment of duty was presented.

Arkla's attempt to distinguish the *Erhart* case on the basis that the contract provided that the defendant-architect was being paid to assure the contractor was in compliance with the contract must fail. That is exactly what the Arkla engineer or inspector was to do according to the contract in this case. As stated in the *Erhart* opinion, the contract provided that "[t]he architect shall have general supervision and direction of the work —. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the contract." As in this case, that left a jury question.

In *Walker* v. *Wittenberg, et al.*, 241 Ark. 525, 412 S.W.2d 62 (1966), an architect was hired to prepare plans and specifica-

tions for the construction of a funeral home. After the plans were approved, the architect contracted with a construction company to build the funeral home. The architect was then hired to supervise and inspect the construction. Pursuant to the contract with the owner, the architect was to "have general supervision and direction of the work" and "authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the Contract." Again, we held there was a fact question as to the duty imposed upon the architect by the term "supervision" and reversed the directed verdict which had been entered in favor of the architect. On remand the Trial Court directed a verdict in favor of the architect. On appeal we affirmed. *Walker* v. *Wittenberg*, 242 Ark. 97, 412 S.W.2d 621 (1967). We stated, without explanation, the only issue on appeal was not that of a general duty to "supervise," but "whether there was a contractual obligation upon the architect to be present continuously during construction. . . ." In view of the narrowness of the issue on the second appeal, our first decision in the case was not affected, and it remains relevant to this case.

Arkla relies on *Jackson* v. *Petit Jean Electric Co-op*, 270 Ark. 506, 606 S.W.2d 66 (1980), to support its contention that it did not have a contractual duty to ensure that Daniel complied with safety regulations. The contract at issue in the *Jackson* case reserved to Petit Jean Electric Co-op the right to alter the size of the work force and the quality and type of tools and equipment used on the job and the right to inspect and approve the work. The case is distinguishable because the contract contained none of the general and specific assignments of supervisory responsibility contained in the contract before us now.

Arkla argues that its actions at the construction site belie its authority to supervise the manner of work and, for example, compliance with safety regulations. In support of its argument it submitted to the Trial Court the affidavit of an Arkla inspector, Jeff Carter. Carter stated he did not tell Daniel how to excavate the trenches or how to perform its duties unless it affected the condition or location of the gas pipes. The fact that Arkla may have taken no affirmative action to ensure the safety regulations provided for in the contract were followed may, in a sense, be supportive of its argument on the factual issue of what the contract required, but the question remains one of fact, and

summary judgment was inappropriate.

Reversed and remanded.

HAYS and CORBIN, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. The majority opinion holds summary judgment was improper because a genuine issue of material fact remained concerning the duty of Arkla to the employees of its independent contractor, Daniel. Appellant alleges Arkla had a duty under the contract between Arkla and Daniel to ensure Daniel complied with the safety regulations provided for in the contract. Appellant contends that had Arkla forced Daniel to comply with the safety regulations provided for in the contract Elkins would not have been injured.

The majority has adopted Restatement (Second) of Torts § 414 (1965) and held a fact question exists whether Arkla assumed the duty to ensure Daniel complied with safety regulations contained in the contract. In doing so, the majority has ignored the weight of authority from jurisdictions which have specifically considered this issue in relation to section 414. Other jurisdictions which have addressed this issue hold that in order for the employer or general contractor to be held liable for a subcontractor's or independent contractor's failure to comply with safety regulations contained in the contract, the employer must have assumed the responsibility for initiating, maintaining, and supervising safety precautions. *Micheletto v. State*, 798 P.2d 989 (Mont. 1990); *Werdehausen v. Union Elec. Co.*, 801 S.W.2d 358 (Mo. App. 1990) (and cases cited therein). We have held that where a contract obligates a subcontractor to provide safety measures for his employees, the prime contractor will not be held responsible to assure compliance by the subcontractor by actual and physical inspection and direction if such is not provided in the contract. *Gordon v. Matson*, 246 Ark. 533, 439 S.W.2d 627 (1969).

The contract at issue obligated Daniel to comply with safety regulations. It did not provide for Arkla to ensure compliance by Daniel with the safety provisions by actual and physical inspection and direction nor did Arkla initiate, maintain or supervise safety procedures. Therefore, summary judgment was proper both under our previous decisions and pursuant to section 414 of

286

the Restatement.

HAYS, J., joins in this dissent.