[No. S091601. Jan. 31, 2002.]

ROSEANNE HOOKER, Plaintiff and Appellant, v.
DEPARTMENT OF TRANSPORTATION, Defendant and Respondent.

## COUNSEL

Paul & Janofsky, Gary M. Paul, John S. Janofsky; Lewis, Goldberg & Ball, Michael L. Goldberg and Michael D. Hutchinson for Plaintiff and Appellant.

Ian Herzog; William L. Veen; James C. Sturdevant; Brian C. Unitt; Dennis M. Elber; David A. Rosen; The Arns Law Firm, Morgan C. Smith and Robert S. Arns for the Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Neumeyer & Boyd, Carol Boyd, Katherine A. Tatikian; Seifert, Henderson & Farricker and Edward Wm. Farricker for Defendant and Respondent.

Sedgwick, Detert, Moran & Arnold and Frederick D. Baker for the American Chemistry Council as Amicus Curiae on behalf of Defendant and Respondent.

John P. Carpenter for Associated General Contractors of California as Amicus Curiae on behalf of Defendant and Respondent.

Fred J. Hiestand for the Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Respondent.

Radoslovich Law Office, Frank M. Radoslovich and Brad J. Stephens for Production Framing Systems, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**BROWN, J.**—This is the latest in a series of cases in which we have considered whether an employee of an independent contractor may sue the hirer of the contractor under tort theories covered in chapter 15 of the Restatement Second of Torts (hereafter Restatement).[1] In *Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*)

---

[1] Unless otherwise indicated, all section references are to the Restatement Second of Torts.

and *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*), we held that an employee of a contractor may not sue the hirer of the contractor under either of the alternative versions of the *peculiar risk* doctrine set forth in sections 413 and 416. Under section 413, a person who hires an independent contractor to do inherently dangerous work, but who fails to provide in the contract or in some other manner that special precautions be taken to avert the peculiar risks of that work, can be liable if the contractor's negligent performance of the work causes injury to others. Under section 416, even if the hirer has provided for special precautions in the contract or otherwise, the hirer can nevertheless be liable if the contractor fails to exercise reasonable care to take such precautions and the contractor's performance of the work causes injury to others. Most recently, in *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235 [108 Cal.Rptr.2d 617, 25 P.3d 1096] (*Camargo*), we held that an employee of a contractor may not sue the hirer of the contractor under the *negligent hiring* theory set forth in section 411. Under section 411, a hirer is liable for physical harm to third persons caused by the hirer's failure to exercise reasonable care to employ a competent contractor to perform work which will involve a risk of physical harm unless it is skillfully and carefully done, or to perform any duty which the hirer owes to third persons.

The question presented in this case is whether an employee of a contractor may sue the hirer of a contractor for the tort of *negligent exercise of retained control* set forth in section 414.[2] Section 414 provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

---

[2]In both *Toland* and *Camargo*, we noted we were not reaching this question. "Our grant of review did not extend to, and therefore we do not decide, a second issue raised by Toland: whether *Privette, supra*, 5 Cal.4th 689, would preclude an employee of an independent contractor from seeking tort recovery for workplace injuries under the theory of section 414 of the Restatement Second of Torts that the general contractor or landowner 'retained control' over the operative details of the hired work. As the Court of Appeal unanimously concluded, the facts Toland offered in opposing summary judgment were insufficient to raise a triable issue on that question." (*Toland, supra*, 18 Cal.4th at p. 264, fn. 2.) "Today we have concluded that the rationale of our decisions in *Privette* and *Toland*, which involved tort liability under the peculiar risk doctrine, also applies to the tort of negligent hiring. Review has been granted in cases that present related questions—whether the *Privette/Toland* rationale should apply as well to the tort of negligent exercise of retained control (*Hooker v. Department of Transportation*, review granted Nov. 1, 2000, S091601) or the tort of negligent provision of unsafe equipment (*McKown v. Walmart Stores, Inc.* (2000) 82 Cal.App.4th 562 [98 Cal.Rptr.2d 214], review granted Oct. 18, 2000, S091097)—and our opinion today should not be read as having prejudged those questions." (*Camargo, supra*, 25 Cal.4th at p. 1245, fn. 2.)

We conclude that a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but that a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries. In this case, although plaintiff raised triable issues of material fact as to whether defendant retained control over safety conditions at the worksite, plaintiff failed to raise triable issues of material fact as to whether defendant actually exercised the retained control so as to affirmatively contribute to the death of plaintiff's husband. Therefore, the trial court properly granted summary judgment in favor of defendant, and the Court of Appeal erred in reversing that judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Paul Hooker was a crane operator. He was employed by a general contractor hired by the California Department of Transportation (Caltrans) to construct an overpass. The overpass was 25 feet wide, and the crane with the outriggers extended was 18 feet wide, so Hooker would retract the outriggers to allow other construction vehicles or Caltrans vehicles to pass. Shortly before the fatal accident, Hooker retracted the outriggers and left the crane. When Hooker returned, he attempted, without first reextending the outriggers, to swing the boom. Because the outriggers were retracted, the weight of the boom caused the crane to tip over. Hooker was thrown to the pavement and killed.

With regard to the question whether Caltrans had negligently exercised the control it had retained over safety at the jobsite, plaintiff relied on the safety chapter of the Caltrans construction manual and the testimony of Caltrans officials responsible for supervising the jobsite. The safety chapter of the Caltrans construction manual provided in pertinent part: "[C]altrans is responsible for obtaining the Contractor's compliance with all safety laws and regulations. . . . [¶] The construction safety coordinator must be familiar with highway construction procedures and equipment, *construction zone traffic management* and be able to *recognize and anticipate unsafe conditions* created by a Contractor's operation. . . . [¶] The Construction Safety Coordinator shall visit contracts [*sic*] periodically to observe the Contractor's operation and traffic conditions affected by the construction." (Italics added.) The manual further gave the Caltrans resident engineer authority to set compliance schedules for the correction of dangerous conditions and to shut down affected operations until the dangerous conditions were corrected.

The senior Caltrans representative on the jobsite, whose responsibilities included safety, had previously observed the crane operators on this project

retract their outriggers to let other vehicles pass; he knew they did so "from time to time[] or frequently"; and he realized that a crane would be unstable if its boom were extended over its side when its outriggers were retracted. The resident Caltrans engineer on the project had the power to shut the project down because of safety conditions and to remove employees of the contractor for failing to comply with safety regulations. He answered "probably" to the following two questions: (1) "Do you agree that if [the crane operator] had been given priority in the area he was working in and the [overpass] was flagged off, that he wouldn't have had to retract his outriggers to permit vehicles to pass?" and (2) "And if he hadn't retracted his outriggers, the crane wouldn't have become unstable and tipped over, correct?" A Caltrans transportation engineer on the project, whose responsibilities included bringing unsafe conditions to the attention of the resident engineer or the general contractor, conceded that if he had seen a crane operator retract the outriggers to permit vehicles to pass, he would have felt "odd" because the more the outriggers are extended, "the better the stability. That's simple physics."

Plaintiff, Hooker's widow, received workers' compensation benefits for his death from the contractor's insurer. Plaintiff also sued Caltrans on the theory Caltrans had negligently exercised control it had retained over safety conditions at the jobsite. Caltrans moved for summary judgment. The motion was based on the ground, among others, that a suit against a hirer of an independent contractor by an employee of the contractor for negligent exercise of retained control was barred by our decisions in *Privette* and *Toland*. The trial court granted Caltrans's summary judgment motion, but the Court of Appeal reversed. We granted review and limited the issue to be briefed and argued to the question whether, under our decisions in *Privette* and *Toland*, an employee of an independent contractor is barred from pursuing a lawsuit against the hirer of the independent contractor on the theory the hirer negligently exercised control it had retained. After review was granted, we issued our decision in *Camargo*, extending *Privette* and *Toland* to the tort of negligent hiring, and we then requested counsel to file supplemental letter briefs exploring the significance of *Camargo* for the question whether an employee of an independent contractor may bring an action for the tort of negligent exercise of retained control against the hirer of the contractor.

DISCUSSION

I. *The Rationale of Privette, Toland, and Camargo*

■ In *Toland*, we summarized the peculiar risk doctrine and explained why we had concluded in *Privette* that under the doctrine a hirer's liability

does not extend to the hired contractor's employees. "Under the doctrine of peculiar risk, a person who hires an independent contractor to do inherently dangerous work can be held liable for tort damages when the contractor causes injury to others by negligently performing the work. The doctrine serves to ensure that innocent bystanders or neighboring landowners injured by the hired contractor's negligence will have a source of compensation even if the contractor turns out to be insolvent. As we explained in *Privette*[, *supra*, 5 Cal.4th at page] 694, courts created the peculiar risk doctrine in the belief that 'as between two parties innocent of any personal wrongdoing— the person who contracted for the work and the hapless victim of the contractor's negligence—the risk of loss occasioned by the contracted work was more fairly allocated to the person for whose benefit the job was undertaken.' [¶] In *Privette* . . . , we unanimously held that under the peculiar risk doctrine the hiring person's liability does not extend to the hired contractor's employees. Because the Workers' Compensation Act (Lab. Code, § 3200 et seq.) shields an independent contractor from tort liability to its employees, applying the peculiar risk doctrine to the independent contractor's employees would illogically and unfairly subject the hiring person, who did nothing to create the risk that caused the injury, to greater liability than that faced by the independent contractor whose negligence caused the employee's injury. (5 Cal.4th at pp. 698-700.) As we concluded: '[T]he property owner should not have to pay for injuries caused by the contractor's negligent performance of the work when workers' compensation statutes already cover those injuries.' (*Id.* at p. 699.)" (*Toland, supra*, 18 Cal.4th at p. 256.)

As we have indicated, the doctrine of peculiar risk, insofar as it was relevant in *Privette* and *Toland*, is described in sections 413 and 416. Under section 413, a person who hires an independent contractor to do inherently dangerous work, but who fails to provide in the contract or in some other manner that special precautions be taken to avert the peculiar risks of that work, can be liable if the contractor's negligent performance of the work causes injury to others. "Because section 413 rests the liability of the hiring person on his or her omission to provide for special precautions in the contract or in some other manner, it is sometimes described as a rule of 'direct liability.' " (*Toland, supra*, 18 Cal.4th at p. 259.) Under section 416, even if the hiring person has provided for special precautions in the contract or otherwise, the hiring person can nevertheless be liable if the contractor fails to exercise reasonable care to take such precautions and the contractor's performance of the work causes injury to others. "Because the hiring person's liability under section 416 . . . flows from the independent contractor's negligent failure to take special precautions in performing the inherently dangerous work, as required by 'the contract or otherwise,' the hiring

person's liability is often referred to as 'vicarious liability.' [Citations.]" (*Toland, supra*, 18 Cal.4th at p. 260, fn. omitted.)

In *Toland*, a subcontractor's employee sued the general contractor for on-the-job injuries, asserting that *Privette* did not bar recovery for direct liability under section 413, but only for vicarious liability under section 416. We rejected the argument, noting that the distinction between the two sorts of liability was not that neat under peculiar risk theory. "[P]eculiar risk liability is not a traditional theory of direct liability for the risks created by one's own conduct: Liability under both sections is in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor, because it is the hired contractor who has caused the injury by failing to use reasonable care in performing the work." (*Toland, supra*, 18 Cal.4th at p. 265.) Accordingly, we held that, "contrary to plaintiff Toland's assertion, our decision in *Privette, supra*, 5 Cal.4th 689, bars employees of a hired contractor who are injured by the contractor's negligence from seeking recovery against the hiring person, *irrespective* of whether recovery is sought under the theory of peculiar risk set forth in section 416 or section 413 of the Restatement Second of Torts. In either situation, it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage." (*Toland, supra*, 18 Cal.4th at p. 267.)

In *Camargo*, we held that an employee of a contractor is barred from suing the hirer of the contractor under the negligent hiring theory set forth in section 411. Under section 411, a hirer is liable for physical harm to third persons caused by the hirer's failure to exercise reasonable care to employ a competent contractor to perform work that will involve a risk of physical harm unless it is skillfully and carefully done, or to perform any duty the hirer owes to third persons. We rejected the argument that *Privette* and *Toland* were distinguishable on the ground that in a negligent hiring case the hirer is, in a sense, being taxed with his *own* negligence, making his liability *direct*. "[T]he same could be said with regard to an action brought under the peculiar risk theory set forth in section 413. More importantly, under both sections 411 and 413, the liability of the hirer is 'in essence "vicarious" or "derivative" in the sense that it derives from the "act or omission" of the hired contractor, because it is the hired contractor who caused the injury by failing to use reasonable care in performing the work.' (*Toland, supra*, 18 Cal.4th at p. 265.) Therefore, in a negligent hiring case under the theory set forth in section 411, just as in peculiar risk cases under the theories set forth in sections 413 and 416, 'it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for

the worker's on-the-job injuries, is limited to providing workers' compensation coverage.' (*Toland, supra,* 18 Cal.4th at p. 267.)" (*Camargo, supra,* 25 Cal.4th at p. 1244.)

II.  *Applying the Rationale of Privette, Toland and Camargo to the Doctrine of Negligent Exercise of Retained Control*

█   Again, section 414 provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to *others* for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." (Italics added.)

Defendant Caltrans contends that employees of a contractor are not *others* for the purposes of section 414. There are no illustrations to section 414, and the comments to section 414 cast no light on this question. (See § 414, coms. a-c, pp. 387-388.) However, section 414—like sections 413 and 416, which set out the peculiar risk doctrine at issue in *Privette* and *Toland,* and section 411, which sets out the negligent hiring doctrine at issue in *Camargo*—appears in chapter 15 of the Restatement. And as we noted in *Toland,* and reiterated in *Camargo,* "a tentative draft to the Restatement 'stated that "when the Sections in this Chapter speak of liability to 'another,' or 'others,' or to 'third persons,' it is to be understood that *the employees of the contractor,* as well as those of the defendant himself, are *not* included." (Rest.2d Torts (Tent. Draft No. 7, Apr. 16, 1962) ch. 15, special note, p. 18, italics added.)' (*Toland, supra,* 18 Cal.4th at pp. 266-267.)" (*Camargo, supra,* 25 Cal.4th at p. 1241.)

In *Camargo,* we noted that "[t]he overwhelming majority of the courts of other jurisdictions that have addressed the question have concluded that an employee of a contractor is *not* a third person for the purposes of section 411. [Citations.]" (*Camargo, supra,* 25 Cal.4th at p. 1241.) Unfortunately, the courts of our sister states have not developed a similar consensus, nor have they spoken with anything like the same clarity, with regard to the question whether employees of contractors are *others* for the purposes of section 414.

The courts of a number of states have assumed, without directly addressing the question, that an employee of a contractor may sue the hirer of the contractor for negligent exercise of retained control, and these courts have focused, instead, on whether a triable issue was presented as to retention of control or on whether a judgment in favor of the plaintiff was supported by sufficient evidence as to retention of control. (See *Alabama Power Co. v.*

*Beam* (Ala. 1985) 472 So.2d 619, 622-625; *Elkins v. Arkla, Inc.* (1993) 312 Ark. 280 [849 S.W.2d 489, 490-492]; *Corsetti v. Stone Co.* (1985) 396 Mass. 1 [483 N.E.2d 793, 799]; *Clausen v. Aberdeen Grain Inspection* (S.D. 1999) 594 N.W.2d 718, 721-723; *Hittel v. WOTCO, Inc.* (Wyo. 2000) 996 P.2d 673, 676-678.)

The courts of states that have directly addressed it are evenly split on the question whether an employee of a contractor may sue the hirer of the contractor for negligent exercise of retained control.

Answering the question in the affirmative, the Supreme Court of North Dakota has stated the rule broadly. "Employees of an independent contractor fall within the protection of Section 414, and an employer of an independent contractor owes a duty to the independent contractor's employees to exercise the retained control with reasonable care." (*Fleck v. ANG Coal Gasification Co.* (N.D. 1994) 522 N.W.2d 445, 447.)

Taking a more nuanced position, the Supreme Court of Utah has held that a hirer is not liable to an employee of an independent contractor for negligent exercise of retained control, unless the hirer's conduct meets the *active participation standard.* (*Thompson v. Jess* (1999) 1999 Utah 22 [979 P.2d 322, 326-328] (*Thompson*).) "Under the 'active participation' standard, a principal employer is subject to liability for injuries arising out of its independent contractor's work if the employer is actively involved in, or asserts control over, the manner of performance of the contracted work. [Citation.] Such an assertion of control occurs, for example, when the principal employer directs that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished. [Citations.]" (*Id.* at p. 327.) Therefore, *retained control* is somewhat of a misnomer for the doctrine as the Utah Supreme Court applies it. "Under the standards announced herein, a duty of care is imposed if the principal employer asserts affirmative control over or actually participates actively in the manner of performing the contracted work. 'Retained,' to the extent the word implies passivity or nonaction, is inapt." (*Id.* at p. 328, fn. 3.)

Like the North Dakota Supreme Court in *Fleck, supra,* 522 N.W.2d 445, the Supreme Court of New Mexico has voiced a broad theory of liability. "If [an employer of an independent contractor] has the right to, and does, retain control of the work performed by the independent contractor, he owes the duty of care to the independent contractor's employee which, if breached, can result in liability to the employee. [Citation.]" (*Valdez v. Cillessen & Son, Inc.* (1987) 105 N.M. 575 [734 P.2d 1258, 1262].) However, the New

Mexico Supreme Court announced this broad rule in a case in which the hirer's conduct would have more than satisfied the active participation standard announced by the Utah Supreme Court in *Thompson, supra*, 979 P.2d 322. An employee of a lathing and plastering subcontractor was injured in the collapse of scaffolding. A grant of summary judgment in favor of the hirer was reversed by the New Mexico Supreme Court because there was evidence in the record that the hirer had issued detailed directions to the subcontractor concerning virtually every aspect of the job, including the manner in which the scaffolding was to be erected, and that the hirer, through its superintendent at the jobsite, had "fired the employees of subcontractors, instructed employees on how, when, and where to do their jobs, and assigned employees to tasks other than those which they had been hired to do." (*Valdez*, at pp. 1262-1263.)

On the other hand, the courts of other states have concluded that an employee of an independent contractor is barred from suing the hirer of the contractor for negligent exercise of retained control. The Court of Appeals of Kentucky concluded that "[n]othing in the discussions of Sections 413, *414*, 416, and 427 of the Restatement, Torts 2d, indicates that an employee of an independent contractor is within the class of 'others' protected by those sections." (*King v. Shelby Rural Electric Cooperative Corp.* (Ky.Ct.App. 1974) 502 S.W.2d 659, 662, italics added.) In *Parker v. Neighborhood Theatres* (1988) 76 Md.App. 590 [547 A.2d 1080], the Court of Special Appeals of Maryland, after concluding the plaintiff had failed to establish retention of control, added that the plaintiff had also failed to provide the court "with any authority that an employee of an independent contractor injured by the negligence of his own master is a person intended to be included among the class of persons to whom the owner owes a nondelegable duty of reasonable care. . . . No matter how appellant phrases it, what he is unsuccessfully attempting is an end run on the Worker's Compensation Law." (*Id.* at p. 1085.) In *Sutherland v. Barton* (Minn. 1997) 570 N.W.2d 1, the Supreme Court of Minnesota found that no triable issue had been presented as to retained control, and so it reinstated the summary judgment in favor of the hirer, which had been reversed by the intermediate appellate court. In the course of reaching that conclusion, the court noted that "when applying the Restatement [Second of Torts] sections that impose liability on companies hiring independent contractors, we have held that 'others' does not include the employees of an independent contractor. [Citation.] This limitation also applies to § 414." (*Id.* at p. 5, fn. omitted.)

Recently, the Courts of Appeal of California that have addressed the question have agreed that a hirer may, under certain circumstances, be liable to an employee of a contractor under a retained control theory. However,

they have disagreed as to whether mere retention of control is sufficient, or whether something more, something like the Utah Supreme Court's concept of *active participation*, must be shown. (Compare *Grahn v. Tosco Corp.* (1997) 58 Cal.App.4th 1373 [68 Cal.Rptr.2d 806] (*Grahn*) with *Kinney v. CSB Construction, Inc.* (2001) 87 Cal.App.4th 28 [103 Cal.Rptr.2d 594] (*Kinney*).) Under *Grahn*, "the hirer may be held liable to the independent contractor's employee where the hirer retains sufficient control over the work of an independent contractor *to be able to* prevent or eliminate through the exercise of reasonable care the dangerous condition causing injury to the independent contractor's employee. [Citations.]" (*Grahn*, at p. 1393, italics added.) Under *Kinney*, on the other hand, mere retention of the ability to control safety conditions is not enough. "[A] general contractor owes no duty of care to an employee of a subcontractor to prevent or correct unsafe procedures or practices to which the contractor did not contribute by direction, induced reliance, or other affirmative conduct. The mere failure to exercise a power to compel the subcontractor to adopt safer procedures does not, without more, violate any duty owed to the plaintiff. Insofar as section 414 might permit the imposition of liability on a general contractor for mere failure to intervene in a subcontractor's working methods or procedures, without evidence that the general contractor affirmatively contributed to the employment of those methods or procedures, that section is inapplicable to claims by subcontractors' employees against the general contractor." (*Kinney*, at p. 39.)

The *Kinney* court, we conclude, correctly applied the principles of our decisions in *Privette* and *Toland*, whereas the *Grahn* court made much the same mistake in applying *Privette* to section 414 as it did in applying that case to section 411 (see *Camargo*, *supra*, 25 Cal.4th at pp. 1242-1245, disapproving *Grahn*, *supra*, 58 Cal.App.4th 1373, insofar as it was inconsistent with that opinion).

In *Grahn*, an employee of an independent contractor sued the hirer of the contractor under three theories of negligence, including negligent hiring (§ 411) and negligent exercise of retained control (§ 414). (*Grahn*, *supra*, 58 Cal.App.4th at pp. 1389-1396.) *Grahn* was decided after *Privette* but before *Toland*, and without the benefit of the gloss provided by *Toland*, the Court of Appeal in *Grahn* misunderstood *Privette* to have been bottomed on the ground that the hirer in a peculiar risk case is not *directly* negligent. "In *Privette*, the court had before it only the issue of whether a peculiar risk theory could be used to hold a nonnegligent hirer liable under vicarious liability for the negligence of the independent contractor." (*Grahn*, at p. 1384.) To the contrary, as we explained in *Toland* and reiterated in *Camargo*, "the rationale of our decision in *Privette* extends to cases where the hirer is

*directly* negligent in the sense of having failed to take precautions against the peculiar risks involved in the work entrusted to the contractor. To repeat: In *Toland*, we rejected the plaintiff's argument that *Privette* did not bar recovery for direct liability under section 413, but only for vicarious liability under section 416." (*Camargo, supra,* 25 Cal.4th at pp. 1243-1244.)

The *Grahn* court repeated its mistake in applying *Privette* to the doctrine of retained control. "Having retained control of the independent contractor's work, the hirer has a *direct* and nonimputed obligation to see that reasonable precautions are taken to eliminate or reduce the risk of harm to the employees of its independent contractors." (*Grahn, supra,* 58 Cal.App.4th at p. 1394, italics added.) Again, the conclusion that a hirer's liability can be characterized as *direct* does not end the inquiry into whether the hirer should be held liable for injuries to a contractor's employees, as we explained in *Camargo*. "Admittedly, as the *Grahn* court observed, under section 411, the hirer is, in a sense, being taxed with his *own* negligence under a theory of *direct* liability. (*Grahn,* at p. 1385.) However, the same could be said with regard to an action brought under the peculiar risk theory set forth in section 413. More importantly, under both sections 411 and 413, the liability of the hirer is 'in essence "vicarious" or "derivative" in the sense that it derives from the "act or omission" of the hired contractor, because it is the hired contractor who caused the injury by failing to use reasonable care in performing the work.' (*Toland, supra,* 18 Cal.4th at p. 265.) Therefore, in a negligent hiring case under the theory set forth in section 411, just as in peculiar risk cases under the theories set forth in sections 413 and 416, 'it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage.' (*Toland, supra,* 18 Cal.4th at p. 267.)" (*Camargo, supra,* 25 Cal.4th at p. 1244.)

Similarly, because the liability of the contractor, the person primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage, it would be unfair to impose tort liability on the hirer of the contractor merely because the hirer retained the ability to exercise control over safety at the worksite. In fairness, as the *Kinney* court recognized, the imposition of tort liability on a hirer should depend on whether the hirer *exercised* the control that was retained in a manner that *affirmatively* contributed to the injury of the contractor's employee. "We are persuaded that the holdings of *Privette* and *Toland* should also apply to employees' claims under section 414 at least where, as here, (1) the sole factual basis for the claim is that the hirer failed to exercise a general supervisory power to require the contractor to correct an unsafe procedure or condition of the contractor's own making, and (2) there is no evidence that

the hirer's conduct contributed in any way to the contractor's negligent performance by, e.g., inducing injurious action or inaction through actual direction, reliance on the hirer, or otherwise. The fairness rationale at the core of *Privette* and *Toland* applies equally to preclude imposition of liability on a hirer for mere failure to exercise a general supervisory power to prevent the creation or continuation of a hazardous practice, where such liability would exceed that imposed on the injured plaintiff's immediate employer, who created the hazard." (*Kinney, supra,* 87 Cal.App.4th at p. 36.)

In *Kinney,* an employee of a subcontractor (PBE) was injured in a fall from scaffolding, and he sued the general contractor, CSB Construction, Inc. (CSB), for negligent exercise of retained control. *Kinney* is strikingly similar to the present case in that, although the hirer in theory retained a high degree of control over safety conditions at the jobsite, there was no indication the hirer contributed to the accident by an affirmative exercise of that control. "The parties agreed for purposes of the summary judgment motion that during the performance of the subcontract, CSB 'had the right to order any safety means or measures that it felt were appropriate' on the jobsite. . . . [According to the testimony of CSB's site superintendent], [i]f he saw an unsafe condition, he 'had a right to do whatever [he thought was] appropriate.' . . . Specifically, '[i]f a subcontractor was working without adequate fall protection and [he] felt that fall protection was required, [he] would . . . tell them that they needed fall protection' and 'would . . . stop the work until they had good fall protection.' . . . However, he did not recall an instance in which he actually directed PBE or any of the other subcontractors on the job to alleviate an unsafe condition." (*Kinney, supra,* 87 Cal.App.4th at p. 31.)

The question, as the *Kinney* court framed it, was "whether a general contractor who claims the power to control all safety procedures on the worksite may be liable to the injured employee of a subcontractor for failing to direct the subcontractor to take safety precautions where there is no evidence that any conduct by the general contractor contributed affirmatively to the injuries." (*Kinney, supra,* 87 Cal.App.4th at p. 30.) *Kinney* answered that question in the negative. "We hold that in light of recent California Supreme Court holdings limiting the liability of general contractors for injuries to employees of subcontractors, liability cannot be imposed on the general contractor based upon a mere failure to require the subcontractor to take safety precautions, where the general contractor's failure is not shown to have affirmatively contributed to the creation or persistence of the hazard causing the plaintiff's injuries. Accordingly, we affirm the judgment for defendant." (*Ibid.*)

The *Kinney* court correctly applied our prior decisions. Imposing tort liability on a hirer of an independent contractor when the hirer's conduct has

affirmatively contributed[3] to the injuries of the contractor's employee is consistent with the rationale of our decisions in *Privette*, *Toland* and *Camargo* because the liability of the hirer in such a case is *not* " 'in essence "vicarious" or "derivative" in the sense that it derives from the "act or omission" of the hired contractor.' " (*Camargo*, *supra*, 25 Cal.4th at p. 1244, quoting *Toland*, *supra*, 18 Cal.4th at p. 265.) To the contrary, the liability of the hirer in such a case is *direct* in a much stronger sense of that term.

Unlike the rule announced in *Grahn*, the rule announced in *Kinney* is not susceptible to the objection raised by Caltrans that a defendant will never be able to prevail on a motion for summary judgment in an action for negligent exercise of retained control. To the contrary, where, as here, the plaintiff fails to present a triable issue as to whether the defendant's exercise of retained control affirmatively contributed to the employee's injuries, summary judgment is appropriate.

Caltrans also objects that two policy considerations that we have relied upon in barring employees of independent contractors from bringing tort actions against the hirers of the contractors under the peculiar risk doctrine or the negligent hiring doctrine also apply to actions brought under the retained control doctrine.

Caltrans finds support in the following passage from *Camargo*: "Two of the related policy considerations we relied upon in *Privette* also support our conclusion here that an employee of an independent contractor should not be permitted to bring a negligent hiring action against the hirer of the contractor: (1) The rule of workers' compensation exclusivity, which shields an independent contractor who pays workers' compensation insurance premiums from further liability to its employees, should equally apply to the person hiring the contractor because the hirer has indirectly paid the cost of such coverage inasmuch as it was presumably calculated into the contract price (*Privette*, *supra*, 5 Cal.4th at p. 699); and (2) permitting such a recovery would give employees of independent contractors an unwarranted windfall, something that is denied other workers—the right to recover tort damages for industrial injuries caused by their employer's failure to provide a safe working environment (*id.* at pp. 699-700)." (*Camargo*, *supra*, 25 Cal.4th at pp. 1244-1245, fn. omitted.)

Caltrans's reliance is misplaced. While it is true that the cost of workers' compensation insurance coverage is as likely to have been calculated into

---

[3]Such affirmative contribution need not always be in the form of actively directing a contractor or contractor's employee. There will be times when a hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury.

the contract price paid by the hirer in a retained control case as it is in peculiar risk or negligent hiring cases, the contract price could not have reflected the cost of injuries that are attributable to the hirer's affirmative conduct. The contractor has no way of calculating an increase in the costs of coverage that are attributable to the conduct of third parties, which is why the employee, despite the existence of the workers' compensation system, is not barred from suing a third party who proximately causes the employee's injury. (See Lab. Code, § 3852.)

Moreover, a close reading of our opinion in *Privette* reveals another ground for distinguishing between peculiar risk and negligent hiring cases, on the one hand, and negligent exercise of retained control cases, on the other, in this regard. "At common law, a person who hired an independent contractor generally was not liable to third parties for *injuries caused by the contractor's negligence* in performing the work. [Citations.] *Central to this rule of nonliability was the recognition that a person who hired an independent contractor had ' "no right of control as to the mode of doing the work contracted for" '* (*Green* v. *Soule* (1904) 145 Cal. 96, 99 [78 P. 337]; accord, *McDonald* v. *Shell Oil Co.* (1955) 44 Cal.2d 785, 788 [285 P.2d 902].)[4] The reasoning was that the work performed was the enterprise of the contractor, who, as a matter of business convenience, would be better able than the person employing the contractor to absorb accident losses incurred in the course of the contracted work. This could be done, for instance, by indirectly including the cost of safety precautions and insurance coverage in the contract price. [Citations.]" (*Privette, supra,* 5 Cal.4th at p. 693, italics added.) On the other hand, if a hirer does retain control over safety conditions at a worksite and negligently exercises that control in a manner that affirmatively contributes to an employee's injuries, it is only fair to impose liability on the hirer.

---

[4]In *McDonald v. Shell Oil Co., supra,* 44 Cal.2d 785, we did not have occasion to grapple with the question presented by this case—whether an employee of a contractor may sue the hirer of a contractor for the tort of negligent exercise of retained control. *McDonald* did involve a negligence suit by an employee of a contractor against the hirer of the contractor. And our discussion did begin with a recitation of the following general principles: "The general supervisory right to control the work so as to insure its satisfactory completion in accordance with the terms of the contract does not make the hirer of the independent contractor liable for the latter's negligent acts in performing the details of the work. [Citation.] An owner is not liable for injuries resulting from defective appliances unless he has supplied them or has the privilege of selecting them or the materials out of which they are made [citation] *or unless he exercises active control over the men employed* or the operations of the equipment used by the independent contractor. [Citation.]" (*Id.* at pp. 788-789, italics added.) However, in *McDonald* we found the hirer of the contractor had retained no more than the general supervisory right to control the work so as to insure its satisfactory completion in accordance with the terms of the contract. (See *id.* at p. 790.) Moreover, of course, *McDonald* long predated *Privette.*

Similarly, if an employee of an independent contractor can show that the hirer of the contractor affirmatively contributed to the employee's injuries, then permitting the employee to sue the hirer for negligent exercise of retained control cannot be said to give the employee an *unwarranted windfall*. The tort liability of the hirer is warranted by the hirer's own affirmative conduct. The rule of workers' compensation exclusivity "does not preclude the employee from suing anyone else whose conduct was a proximate cause of the injury" (*Privette, supra,* 5 Cal.4th at p. 697), and when affirmative conduct by the hirer of a contractor is a proximate cause contributing to the injuries of an employee of a contractor, the employee should not be precluded from suing the hirer.

*Grahn v. Tosco Corp., supra,* 58 Cal.App.4th 1373, is disapproved insofar as it is inconsistent with this opinion.

### III. *By Merely Permitting Traffic to Use the Overpass, Caltrans Did Not Affirmatively Contribute to Mr. Hooker's Death*

In oral argument before this court, a question was raised as to whether Caltrans *required*, in the sense of *ordered*, the crane operator to retract his outriggers to permit vehicles to pass. The record does *not* reflect that any such order was issued by Caltrans. Indeed, in response to a question from the bench, counsel for the plaintiff admitted: "The honest answer to your question . . . is [Caltrans] permitted it to happen. They permitted this traffic to happen on the overpass. They didn't direct it to happen."

Confusion in this regard was generated by an earlier statement made by plaintiff's counsel. In arguing that Caltrans's exercise of retained control affirmatively contributed to Mr. Hooker's death, plaintiff's counsel stated, "I think it's an affirmative act when Caltrans's own engineer specifically comes up and requires the operator to retract the outriggers." He later explained what he meant by this: "There was evidence in the record that the Caltrans Senior Engineer himself used the overpass as a shortcut to traverse the construction and had to wait until the operator retracted the outriggers." This narrower statement is supported by the record.

Perhaps the clearest way to put it is this: Caltrans *permitted* construction vehicles, as well as vehicles owned and operated by Caltrans, to use the overpass while the crane was being operated, and because the overpass was narrow, the crane operator was *required* to retract the outriggers in order to let the traffic pass. That is what plaintiff asserted below: "Given the narrow width of the portion of the [high occupancy vehicle] lane where he was working, Mr. Hooker was regularly required to retract his extended outriggers to permit construction vehicles, including vehicles owned and operated by Defendant State of California, to pass."

We are not persuaded that Caltrans, by *permitting* traffic to use the overpass while the crane was being operated, *affirmatively contributed* to Mr. Hooker's death. Interestingly, when pressed for a standard, plaintiff's counsel referred to a passage in the *Thompson* opinion of the Utah Supreme Court quoted above: "Under the 'active participation' standard, a principal employer is subject to liability for injuries arising out of its independent contractor's work if the employer is actively involved in, or asserts control over, the manner of performance of the contracted work. [Citation.] Such an assertion of control occurs, for example, when the principal employer *directs* that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished. [Citations.]" (*Thompson, supra,* 979 P.2d at p. 327, italics added.) To repeat, Caltrans did *not* direct the crane operator to retract his outriggers to permit traffic to pass.

Accordingly, under the standard we announce today, summary judgment was appropriate here. Plaintiff raised triable issues of material fact as to whether defendant retained control over safety conditions at the worksite. However, plaintiff failed to raise triable issues of material fact as to whether defendant actually exercised the retained control so as to affirmatively contribute to the death of plaintiff's husband. While the evidence suggests that the crane tipped over because the crane operator swung the boom while the outriggers were retracted, and that the crane operator had a practice of retracting the outriggers to permit construction traffic to pass the crane on the overpass, there was no evidence Caltrans's exercise of retained control over safety conditions at the worksite affirmatively contributed to the adoption of that practice by the crane operator. There was, at most, evidence that Caltrans's safety personnel were aware of an unsafe practice and failed to exercise the authority they retained to correct it.

### DISPOSITION

The judgment of the Court of Appeal is reversed and the matter remanded for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Chin, J., and Moreno, J., concurred.

**WERDEGAR, J.**—I respectfully dissent. While I agree with the majority that a party hiring an independent contractor may be liable in tort to employees of the contractor for negligent exercise of control the hirer has retained over any part of the work, I disagree that such liability may exist

only when the hirer's exercise of control "*affirmatively* contributed to the injury of the contractor's employee" (maj. opn., *ante*, at p. 210). The majority's analysis, and the result it reaches in this case, usurp the factfinding and fault allocation functions assigned to the jury under our comparative fault system.

The evidence produced on summary judgment showed that California Department of Transportation (Caltrans) employees had permitted construction traffic on the overpass where plaintiff's decedent was working, and had driven Caltrans's own vehicles on the overpass. The Caltrans construction manual required the construction safety coordinator to know proper "construction zone traffic management," implying that Caltrans bore responsibility for exercising such management. A reasonable trier of fact could infer that Caltrans retained control over construction zone traffic management and that, in exercising this retained control, Caltrans used, and permitted other vehicles to use, the overpass. The resulting traffic frequently required the decedent to retract the outriggers of his crane, a practice that led proximately to his fatal accident. Evidence showed as well that Caltrans representatives had observed the outriggers being repeatedly retracted, knew the crane was unstable in that state, and knew that if they were to "flag off" the overpass the crane operator would not have to retract the outriggers. This complex of evidence raises at least a triable issue of fact (Code Civ. Proc., § 437c) as to whether Caltrans negligently exercised its retained control over construction zone traffic, contributing to the decedent's death.

To be sure, the evidence suggests that Caltrans did not bear *sole* fault in the accident. Caltrans apparently did not *order* the decedent to retract the outriggers for passing traffic; nor, apparently, did Caltrans direct the decedent to attempt operating the crane before reextending the outriggers. It may be that a jury, hearing all the evidence, would find the decedent largely at fault for his own death and assign to Caltrans only a small share of the fault, based on its having permitted and contributed to the overpass traffic. In that case, Caltrans's liability would be reduced; the comparative fault system operates to reduce the liability of a negligent hirer in the same manner it reduces the liability of other third parties for employee injuries. (See *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253, 280 [74 Cal.Rptr.2d 878, 955 P.2d 504] (conc. & dis. opn. of Werdegar, J.).) No special *judicial* test of negligence is required in order to achieve a fair allocation of fault.

The majority's "affirmatively contribute" test of negligence liability reflects the notion that a person who actually performs a dangerous act, or directs its performance, is likely to be more at fault for the resulting accident

than a person who merely fails to correct the conditions creating the danger. One might expect that generalization to be reflected, as well, in a jury verdict on liability: to the extent the hirer's fault is seen as resting solely on inaction, the jury is likely to assign the hirer a low share of fault in comparison to those who contributed to the injury by their actual participation in the operation. But the determination of comparative fault in this manner, like any negligence determination, rests on the specific facts of the case: to whom was the danger apparent; who had the ability to alleviate the danger, and by what means and at what costs? From the distinctions between activity and passivity, act and omission, which a jury might properly use to measure and compare fault, the majority fashions a purported bright-line rule for courts to apply.[1] Its effort is both unnecessary and inimical to the jury system.

I do not suggest every retained-control claim must go to a jury. The mere fact that a contract gives the hiring party general control over the project and the authority to stop work should not create liability if, in practice, the hirer's supervision and control did not actually extend to any part of the operation contributing to the hazard. As the Restatement Second of Torts cautions: "It is not enough that [the hirer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. . . . There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." (Rest.2d Torts, § 414, com. c, p. 388; see also *Hobbs v. Mobil Oil Corporation* (Alaska 1968) 445 P.2d 933, 936 [hirer not liable to a contractor's employee if "under the contract and in actual practice" the hirer's control does not affect the contractor's "methods of work" or the "operative detail" of the work].)

The present case, however, is not merely one of contractual or formal control. Plaintiff has produced evidence from which one can infer that Caltrans's *actual* exercise of control over traffic on the site affected the manner in which the crane operations were conducted; the contractor, consequently, was *not* "entirely free to do the work in his own way." (Rest.2d Torts, § 414, com. c, p. 388.) Whether after full discovery and trial a jury

---

[1]The line drawn is actually rather fuzzy in light of the majority's suggestion that some "omissions" may be deemed "affirmative" contributions to an injury. (Maj. opn., *ante*, at p. 212, fn. 3.) The majority further fails to explain why a hirer's "promise[]" (*ibid.*) to exercise control allows for possible liability while the contractual retention of control is held insufficient as a matter of law, even, as in this case, where the hirer's retention of control could reasonably have led the contractor and its employees to expect that the hirer would in fact exercise its control when necessary.

would agree with plaintiff that Caltrans's management of traffic at the site was partly responsible for the crane's unsafe operation and the resulting accident is not at issue at this point in the proceedings. To properly obtain summary judgment, defendant must show that plaintiff "has not established, *and cannot reasonably expect to establish*, a prima facie case" of negligent exercise of retained control. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143], italics added.) Defendant has not made that showing.

I would affirm the judgment of the Court of Appeal.

Appellant's petition for a rehearing was denied March 27, 2002. Chin, J., did not participate therein.