Filed 9/8/23 Smith v. Skanska USA CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEVE SMITH,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>SKANSKA USA,<br><br>        Defendant and Respondent. | A166374<br><br>(City & County of San Francisco Super. Ct. No. CGC-20-587082) |

Plaintiff Steve Smith was injured while working for a subcontractor at a worksite and brought this personal injury action against the general contractor, Skanska USA (Skanska).  The trial court granted Skanska's motion for summary judgment on the ground the action is barred by the rule of *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*).  Smith appeals, and we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

*Complaint and Motion for Summary Judgment*

The undisputed facts show Skanska was the general contractor for construction of a housing project in San Francisco, owned by the Regents of the University of California (the project).  Skanska contracted with Cupertino Electric, Inc. (Cupertino Electric) to perform a portion of the electrical work

1

for the project. Smith worked for Cupertino Electric as an inside journey wireman.

Smith, who had worked on the project for less than one day, attended a safety meeting with other subcontractors, conducted by Skanska, on the morning of October 2, 2018. Immediately after the meeting, his foreman, James Solwick of Cupertino Electric, told Smith to follow him. Solwick, who was familiar with the job site, led Smith to a path where rebar was being installed, toward the area where Smith would be working. As Smith walked, he caught his pant leg on rebar that was on the path, and he fell and injured his shoulder. He has received workers' compensation for his injuries through Cupertino Electric.

Smith brought this action against Skanska and Webcor Builders, Inc. (which is not a party to this appeal), alleging Skanska was negligent in its maintenance of the worksite and failed to warn workers properly of the dangerous condition.

Skanska moved for summary judgment, contending that on these facts, the action was barred by the rule of *Privette*, which limits liability for injuries to employees of contractors and subcontractors.

*Smith's Evidence in Opposition to Summary Judgment*

In opposition to the motion, Smith submitted his own declaration, stating that he attended a safety meeting the morning of the incident, led by Skanska's "safety man," who did not warn those attending not to use any path at the building site. Afterward, Smith met his supervisor, James Solwick, at an area where all the subcontractors had their storage containers, and followed him down a path that was not marked or designated, and that was used by all the trades, including Cupertino Electric. As they walked, Smith's pant leg caught on something and he fell forward and injured his

2

shoulder.  He saw that there was loose construction material on the path, including rebar on which his pant leg was caught.  Solwick then led him down into a garage, the only area where Cupertino Electric employees were working that day.

Solwick testified at his deposition that Skanska was in charge of running the job site and coordinating the work done there, and that Skanska's "safety guy" ran a daily safety meeting at which he would discuss the work being done on the jobsite that day.  The accident took place when Solwick and Smith were walking the approximately 100 feet from the storage container along a pathway leading to the area Smith would be working.  The pathway was crowded with rebar and construction debris.

Daniel Myrick, Skanska's environmental health and safety coordinator, was responsible for inspecting the job site, identifying hazards, and ensuring work crews were following construction work plans.  When asked whether Skanska had the responsibility to provide safe working conditions for Cupertino Electric's employees, he replied that it did.

Myrick testified that the path on which Smith was injured was "just kind of a naturally formed path of how people moved through the job," rather than a designated path, and it was the shortest path from the storage containers to one of the buildings under construction.  Because it was the shortest path, Skanska "made a concerted effort for people to keep it clear for traffic at all times."  There were two routes from the storage container area to the underground garage at which Smith would be working, a ramp that was hazardous because it was an "active rebar zone," and an access ladder reached via the pathway.

*Trial Court's Ruling*

The trial court granted the motion for summary judgment, and Smith appealed the ensuing judgment.

## DISCUSSION

### I. Standards on Summary Judgment

Summary judgment should be granted if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (*Huerta v. City of Santa Ana* (2019) 39 Cal.App.5th 41, 46.) A genuine issue of material fact exists if the evidence would allow a reasonable person to find the underlying fact in favor of the opposing party under the applicable standard of proof. (*Id.* at p. 47.)

On appeal, we review the trial court's ruling on the motion for summary judgment de novo, considering all the evidence in the moving and opposition papers except that to which objections were sustained. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66; *Steuer v. Franchise Tax Bd.* (2020) 51 Cal.App.5th 417, 423.) We liberally construe the evidence in favor of the party opposing summary judgment, resolving doubts about the evidence in favor of that party. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

### II. *Privette* Doctrine

In general, an employee of an independent contractor may not recover from the contractor's hirer for work-related injuries caused by the contractor's failure to provide safe working conditions, but is instead limited to recovery under workers' compensation. (*Privette*, *supra*, 5 Cal.4th at pp. 692, 702; *SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594 (*SeaBright*).) This rule establishes a rebuttable presumption that an independent contractor's hirer "delegates to that contractor its tort law duty

4

to provide a safe workplace for the contractor's employees." (*SeaBright*, at p. 600; *Alvarez v. Seaside Transportation Services LLC* (2017) 13 Cal.App.5th 635, 643.)

There are exceptions to the *Privette* rule, however. One exists when the hirer retains control over safety conditions at a worksite and exercises that retained control in a manner that "*affirmatively contributed* to the employee's injuries." (*Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 202 (*Hooker*).) "An affirmative contribution may take the form of directing the contractor about the manner or performance of the work, directing that the work be done by a particular mode, or actively participating in how the job is done." (*Khosh v. Staples Construction Co., Inc.* (2016) 4 Cal.App.5th 712, 718 (*Khosh*).)

However, failure to correct an unsafe condition, without more, is not an affirmative contribution. (*Khosh, supra*, 4 Cal.App.5th at p. 718.) And, our high court has explained, "A hirer might be responsible for the presence of a hazard and even convey an expectation that the contractor perform its work without eliminating that hazard altogether, and yet leave the contractor ample freedom to accommodate that hazard effectively in whatever manner the contractor sees fit. [Citation.] In such instance, the hirer does not necessarily retain a sufficient degree of control over the contractor's manner of performing the contracted work to constitute 'retained control.' " (*Sandoval v. Qualcomm Incorporated* (2021) 12 Cal.5th 256, 276.) Even if the hirer has retained control, the worker must prove it *also* "actually exercised that retained control in such a way as to affirmatively contribute to the injury." (*Ibid.*)

*Hooker* is instructive. The decedent there was a crane operator employed by a contractor hired by the California Department of

5

Transportation (Caltrans) to construct an overpass. He was killed in a workplace accident after he retracted the outriggers on his crane to allow other vehicles to pass, then swung the boom on his crane without first reextending the outriggers. (*Hooker*, *supra*, 27 Cal.4th at p. 202.) His widow sued Caltrans on the theory it negligently exercised control over safety conditions at the jobsite because the safety chapter of its construction manual required Caltrans's personnel to recognize and anticipate unsafe conditions created by a contractor's operation, and a Caltrans representative responsible for safety had observed crane operators retract their outriggers to let other vehicles pass and knew a crane would be unstable if its boom were extended when the outriggers were retracted. (*Id*. at pp. 202–203.)

On these facts, our high court concluded Caltrans was entitled to summary judgment. In doing so, it quoted with approval the following language in *Kinney v. CSB Construction*, *Inc.* (2001) 87 Cal.App.4th 28, 39: " '[A] general contractor owes no duty of care to an employee of a subcontractor to prevent or correct unsafe procedures or practices to which the contractor did not contribute by direction, induced reliance, or other affirmative conduct. The mere failure to exercise a power to compel the subcontractor to adopt safer procedures does not, without more, violate any duty owed to the plaintiff.' " (*Hooker*, *supra*, 27 Cal.4th at p. 209.) And, our high court concluded, by merely permitting (rather than directing) crane operators to retract their outriggers to allow vehicles to pass, Caltrans did not affirmatively contribute to the accident. (*Id*. at pp. 214–215; accord, *Kinney*, at pp. 36–39 [no liability where general contractor retained control over safety conditions at jobsite but did not contribute through affirmative exercise of control to subcontractor's employee's accident].)

Another helpful case, *Brannan v. Lathrop Construction Associates*, *Inc.* (2012) 206 Cal.App.4th 1170, considered whether *Privette* and its progeny barred an action by an employee of a masonry subcontractor. The employee slipped and fell when, in order to gain access to the area in which he was working, he stepped onto scaffolding that had been left at the work site for the convenience of another subcontractor. He sued the general contractor for negligence in coordinating construction work at the site. (*Id*. at pp. 1172–1174.) Our colleagues in Division One of this appellate district upheld a grant of summary judgment to the general contractor. They explained that there was no evidence the general contractor knew before the plaintiff's fall that he or others were climbing over the scaffolding or that the practice posed a safety hazard. (*Id*. at p. 1179.) The result might be different, our colleagues explained, if the subcontractor had asked the general contractor to remove the scaffolding for safety purposes and the general contractor had agreed to do so but negligently failed to follow through. But that was not the case. (*Id*. at p. 1180; see also *Tverberg v. Fillner Construction*, *Inc.* (2012) 202 Cal.App.4th 1439, 1446 [general contractor's failure to institute specific safety measures is not actionable unless it agreed to implement the measures].)

These authorities persuade us the trial court correctly granted summary judgment. The undisputed evidence shows that Skanska hired Cupertino Electric, Smith's employer, to perform electrical work. Solwick, Cupertino Electric's employee and Smith's supervisor, led Smith along the path where rebar lay. The accident took place during the course of Smith's work duties, while the two were walking from their employer's storage container to the garage where Smith would be doing electrical work. There is no evidence that Skanska directed or controlled the way Cupertino Electric

performed its work, or that Cupertino Electric could not have taken precautions to accommodate conditions in the pathway. And although there is evidence Skanska retained some control over safety conditions at the jobsite and tried to keep the pathway free of debris, there is no evidence of any affirmative conduct on Skanska's part that led to an unsafe condition. Smith points out that a hirer may be liable for its omission if, for instance, the hirer promised to undertake a particular safety measure but failed to do so (see *Hooker*, *supra*, 27 Cal.4th at p. 212, fn. 3), but he points to no evidence that Skanska affirmatively promised to remove obstacles from the path, or even that it was aware that any obstacles were present at the time of Smith's accident. *Privette*, *Hooker*, and their progeny bar Smith's action against Skanska.

Smith argues that the rule of *Privette* does not even come into play because Skanska did not delegate control or maintenance *of the path* to Cupertino Electric. We see some tension between the narrowness of Smith's focus on the path and the breadth of the delegation described in binding authorities like *SeaBright*, which makes the contractor generally responsible for providing its employees a safe workplace. (See *SeaBright*, *supra*, 52 Cal.4th at p. 600.) And crucially, Smith provides no legal authority for his position beyond a single case that is clearly inapposite, *Ramirez v. PK I Plaza 580 SC LP* (2022) 85 Cal.App.5th 252. In *Ramirez*, the tenant of the shopping center hired a self-employed contractor to remove an exterior sign. In the course of his work, the contractor entered a cupola on the shopping center's roof and fell through. He sued the owner of the shopping center for his injuries. (*Id*. at p. 257.) Our colleagues in Division One concluded the rule of *Privette* did not apply because the shopping center owner did not hire the tenant or the contractor to perform the work, and it therefore did not

8

delegate its own responsibility for the roof's condition either to the tenant or to the contractor as contemplated by *Privette*. (*Id*. at pp. 257–258, 265–270.) Here, in contrast, Skanska *did* hire Cupertino Electric to perform electrical work at the jobsite. *Ramirez* does not establish the inapplicability of *Privette*. Smith's accident happened while he was on the job, being led by his Cupertino Electric supervisor from one work area to another. Nothing in the record indicates that Skanska's delegation of responsibility for workplace safety did not extend to those activities. The trial court properly granted summary judgment.

## DISPOSITION

The judgment is affirmed. In the interests of justice, each side shall bear its own costs on appeal.


TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.


*Smith v. Skanska USA* (A166374)

9