Filed 9/29/14  Andrews v. Verizon CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SONDRA ANDREWS, | D065965 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVVS906850) |
| VERIZON COMMUNICATIONS, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Joseph R. Brisco, Judge.  Affirmed.

Welebir Tierney & Weck and Cory R. Weck for Plaintiff and Appellant.

AlvaradoSmith, Raul F. Salinas and Mikel A. Glavinovich, for Defendant and Respondent.

Plaintiff Sondra Andrews brought a negligence action against Verizon Communications, Inc. and Verizon California, Inc. (Verizon) after she was injured when she fell from a chair while working at a Verizon facility.  Andrews was employed by

Verizon's independent contractor security service. Andrews alleged Verizon was negligent by failing to exercise reasonable care to provide safe equipment for use by its independent contractor's employees. The court granted Verizon's summary judgment motion, finding there were no triable issues of material fact as to Verizon's negligence.

On appeal, Andrews contends the court erred in granting summary judgment because triable issues of material fact exist as to whether Verizon affirmatively contributed to her injuries and whether the chair was safe for its intended use. We reject these contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Andrews was employed by Securitas Security Services USA, Inc. (Securitas), an independent contractor retained by Verizon to provide security services at its facilities. Securitas employees are stationed at guard shacks, which are small, freestanding structures from which guards monitor those who enter and exit the Verizon facility.

Normally an office chair is available for use by Securitas employees during their eight-hour shifts. However, a few days before the incident, the office chair broke. Marvin Kephart, another Securitas employee, replaced the broken chair with a barstool-type chair he obtained from one of Verizon's buildings with the permission of a Verizon employee. The wrought iron, four-legged chair weighed approximately 23 pounds and its seat height was 29 inches from the ground.

On the day of the accident, Andrews was working a graveyard shift. At approximately 4:00 a.m., Andrews attempted to get down from the replacement chair, but the top of her right foot became caught in the chair's footrest. She stumbled trying to

2

stand up from the chair causing both her and the chair to fall. Andrews sustained a fracture to her upper spine, which required surgery and a spinal fusion. She has not returned to work since the incident.

Andrews filed a negligence suit against Verizon, alleging it failed to exercise reasonable care, failed to provide a reasonably safe place for Andrews to work, and failed to "furnish, maintain or repair" a chair that was reasonably safe for her use. Andrews claimed Verizon "knew or should have known the chair was unsafe . . . ."

Verizon moved for summary judgment, arguing (1) there was no evidence establishing that any act or omission by Verizon was a substantial factor in causing Andrews's injuries and (2) Verizon did not breach a duty of care to Andrews because the chair was safe.

In support of its argument on the causation element, Verizon argued Andrews's assertion it "provided" an unsafe chair for her use was belied by her deposition testimony in which she stated that two Securitas employees, Marvin Kephart and Gayle McNair, brought the chair into the guard shack. Verizon also cited to a portion of Andrews's deposition in which she testified she did not know who gave Kephart permission to use the chair in the guard shack.

In support of its claim the chair was safe, Verizon submitted the declaration of Fred Johnson, Ph.D., a former physics professor at California State University, Fullerton. Dr. Johnson performed a stability analysis of the chair and opined it was "safe, secure, and easy to sit on." He concluded it "would be virtually impossible to tip the chair over

3

from a proper seated position.  Accordingly, the chair was appropriate for its use as it was stable as positioned in the shack."

In opposition to Verizon's summary judgment motion, Andrews contended a triable issue of material fact existed as to whether Verizon provided the chair for use in the security guard shack and thus that Verizon was a substantial cause of her injuries.  In support, Andrews submitted a portion of Kephart's deposition testimony to establish that a Verizon supervisor provided the chair to him.  In this deposition testimony, Kephart testified as follows:

> "Q: And the chair that we've previously identified in Exhibit 1, it looks like a barstool of some type; is that correct?"
>
> "A: Yes, sir."
>
> "Q: Do you know whose chair that is?  Is it Securitas' chair or Verizon's?"
>
> "A: It was Verizon's chair."
>
> "Q: And do you have any knowledge as to who put that chair in the security guard shack?"
>
> "A: I did, sir."
>
> "Q: And who provided that chair to you?"
>
> "A: The Verizon supervisor at the other complex.  The other complex is 16071 Mojave Drive.  That's off La Paz Drive."
>
> "Q: So it's provided to you by Verizon?"
>
> "A: By a—her name was Susan.  Was it Sue?  I can't remember her last name though."
>
> "Q: Okay.  But she was a supervisor at Verizon?"
>
> "A:  Yes.  Yes, sir."

4

Later in his testimony, Kephart explained: "I asked [Susan] about the chairs in there, if they're being used. She said no, they don't use them no more. I explained to her that the chair we have in the guard shack was getting worn and we had to replace it until we can get another office chair. She said it would be fine. Take it. There were six chairs there." When asked about Susan's job title, Kephart responded that he did not know "for sure. She's a supervisor. Or she might be a clerk. But she sat right there as you go in the building." He said: "Once you go inside the doors and stuff, she sat right there. She could just be a clerk. But she does have responsibilities though."

Andrews additionally relied on the deposition testimony of Randy Haggard, a Verizon supervisor in charge of facilities management, who stated Securitas employees needed permission from Verizon before bringing new chairs or office furniture into the guard shack. He testified that there is a specific protocol by which equipment such as a broken chair needed to be reported and replaced, and indicated that Kephart did not follow this protocol.

Andrews also argued triable issues of fact existed as to whether the chair was unsafe. In support, she submitted Haggard's deposition testimony in which he stated the chair was "not a working chair," and that he would not have selected this chair to use in the guard shack. Haggard stated that the sole basis for this opinion was that the chair "doesn't look comfortable to me." When he was asked whether there was any other reason he would not have allowed the chair to be used by security employees, Haggard answered "No."

5

Andrews additionally proffered the declaration of Michael Nicholas, a "private safety consultant specializing in the workers' compensation field." Nicholas did not examine the chair, but opined that: (1) Andrews's fall and injuries were foreseeable because the chair was nonadjustable, had only four legs, and did not have casters; and (2) the chair was not safe, stable, or suitable for the office environment in which it was used.

Verizon objected to Nicholas's declaration on numerous grounds, including that his opinions were not based on his own inspection of the chair or any analysis of the chair's dimensions and amount of force required to tip it over.

After considering the parties' submissions and conducting a hearing, the court granted Verizon's summary judgment motion. The court reasoned that Andrews was an employee of Verizon's independent contractor, and therefore she was required to prove Verizon "affirmatively contributed to the injury." (Capitalization omitted.) The court found no "such evidence has been presented." (Capitalization omitted.) The court also sustained Verizon's objections to two paragraphs of Andrews's expert's declaration that contained his opinions regarding the safety of the chair and the foreseeability of Andrews's injuries.

DISCUSSION

I. <em>Applicable Legal Standards</em>

A moving party is entitled to summary judgment when the party establishes it is entitled to judgment as a matter of law. (Code of Civ. Proc., § 437c, subd. (c).) A defendant may make this showing by demonstrating that the plaintiff cannot establish one or more elements of all of the causes of action, or that the defendant has a complete

6

defense to each cause of action. (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466; see also Code Civ. Proc., § 437c, subd. (o).) Once the defendant meets this burden, the burden shifts to the plaintiff to set forth "specific facts" demonstrating the existence of a triable issue of material fact. (Code of Civ. Proc., § 437c, subd. (p).)

We review a summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.) "In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment. [Citation.] We liberally construe the evidence in support of the party opposing summary judgment [citation], and assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under the applicable legal standards. [Citation.]" (*Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1346.) "We are not bound by the trial court's reasons for granting summary judgment because we review the trial court's ruling, and not its rationale." (*Avidity Partners, LLC v. State of California* (2013) 221 Cal.App.4th 1180, 1192.)

To prevail on a negligence claim, a plaintiff must show duty, breach of duty, causation, and damages. (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1106.) Verizon moved for summary judgment asserting that the undisputed facts showed Andrews could not establish the breach of duty or causation elements. Although the court granted the motion solely on the causation ground, we can affirm on either ground because Andrews briefed both issues on appeal. Code of Civil Procedure section 437c, subdivision (m)(2) prohibits an appellate court from affirming a summary judgment on a ground not relied on by the trial court unless the appellate court permits

7

supplemental briefing. However, supplemental briefing is not required here because the issue was raised below and has been briefed on appeal. (See *Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39; *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147, fn. 7.)

## II. *No Evidence Chair Was Unsafe*

Andrews alleged Verizon breached its duty by providing her with an unsafe chair. In support of its summary judgment motion, Verizon produced evidence that the chair was not defective or unsafe for use in the guard shack. Specifically, Verizon's expert witness, Dr. Johnson, a physicist, opined that an individual like Andrews, if properly seated in the chair, would be in a highly stable configuration with respect to her center of gravity. Therefore, it would be "virtually impossible to tip the chair over from a proper seated position." Based on his physical evaluation of the chair that included a stability analysis, Dr. Johnson opined the chair was "safe, secure, and easy to sit on" and "was appropriate for use in the guard shack." Verizon also produced evidence that Andrews's fall occurred as a result of her foot getting caught in the footrest as she attempted to get up from the chair, and not from any instability in the chair.

This evidence satisfied Verizon's summary judgment burden to show it did not breach a duty because the chair was safe and not defective. The burden thus shifted to Andrews to show the chair was unsafe. In attempting to meet this burden, Andrews relied primarily on her expert, safety consultant Nicholas. However, the court sustained Verizon's evidentiary objections to Nicholas's opinions concerning the safety of the chair, and Andrews has not challenged the court's ruling on appeal. We are therefore bound by

8

the court's ruling and must disregard the expert's opinions.  (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1124.)

On appeal, Andrews contends the deposition testimony of Verizon's facilities manager Haggard created a triable issue of material fact on the chair-safety issue.  In this testimony, Haggard said the chair from which Andrews fell was "not a working chair" and should not be utilized by people who are working.  However, in response to counsel's question, Haggard made clear that his objection to the chair was related to work-comfort issues, and that he had no other concerns with the chair.  Haggard said he would not have chosen the chair for use in the guard shack because it did not "look comfortable" to him.

Although Haggard's opinion the chair was "not a working chair" may support a conclusion the chair was not an ergonomically sound or a comfortable chair for Securitas employees to use for extended time periods, this alone does not support a reasonable inference the chair was defective or unsafe.  Under well-settled summary judgment law, "[a]n issue of fact . . . is not created by 'speculation, conjecture, imagination or guess work.' "  (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196.)  The fact that a chair is not an ideal choice for an office environment does not lead to a reasonable inference that it is unsafe for this use.

Summary judgment was proper because the undisputed facts showed Andrews had no admissible evidence to show the chair was unsafe.

9

### III. *No Evidence Verizon Contributed to Injury*

We alternatively conclude summary judgment was proper because the undisputed facts showed Verizon did not affirmatively contribute to Andrews's injuries and/or did not exercise control over the chair-replacement decision.

"Generally, when employees of independent contractors are injured in the workplace, they cannot sue the party that hired the contractor to do the work. . . . [¶] By hiring an independent contractor, the hirer implicitly delegates to the contractor any tort law duty it owes *to the contractor's employees* to ensure the safety of the specific workplace that is the subject of the contract." (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594; see *Privette v. Superior Court* (1993) 5 Cal.4th 689, 696; *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253, 256.)

Two exceptions are potentially relevant here. First, an exception applies when the hirer's act of providing unsafe equipment affirmatively contributed to the party's injuries. (*McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219, 225 (*McKown*).) Second, the hirer of an independent contractor may be held liable for injuries to the contractor's employee if the hirer's negligent exercise of retained control over safety conditions at a worksite "*affirmatively contributed* to the employee's injuries." (*Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 202 (*Hooker*).)

Neither exception applied here.

First, with respect to the unsafe equipment exception, the summary judgment record shows Securitas employee Kephart was aware there was a Verizon building with several unused chairs that previously were used for employees who were breastfeeding.

10

He selected the chair and then brought it into the guard shack. In so doing, Kephart asked a Verizon employee whether the chairs were being used. After explaining he needed a temporary replacement for a "worn" office chair in the guard shack, the Verizon employee said he could take it. Several days later, Andrews was injured when she fell from the replacement chair.

This evidence does not show Verizon affirmatively contributed to Andrews's injuries. Andrews did not present any evidence that "Susan," the Verizon employee who permitted Kephart to take the chair, affirmatively participated in selecting or supplying the chair for use in the guard shack. Moreover, there was no evidence that this Verizon employee had the authority to make office equipment decisions. Her job title was never identified. Kephart thought she was a "clerk" or a "supervisor" or a receptionist who sat at the front desk of a Verizon building. There is no evidence that her job responsibilities included the authority to make equipment decisions. Additionally, the fact there was a policy that Securitas employees must obtain approval from a Verizon manager to obtain new or replacement chairs does not show this policy was followed in this case. The undisputed evidence showed that the Securitas employee obtained the chair through his own initiative and not through the standard equipment replacement policy. Verizon did not participate in selecting or providing the chair for Andrews's use.

In this regard, this case is unlike *McKown*, in which the independent contractor was injured by a defective forklift supplied by the defendant. (*McKown, supra*, 27 Cal.4th 219.) In *McKown*, the evidence showed the defendant supplied its own forklift and requested that it be used by the plaintiff in the installation. (*Id.* at p. 223.) The

11

plaintiff later sustained injuries resulting from a defect in the forklift. (*Ibid.*) Under these circumstances the California Supreme Court held the defendant hirer could be held liable for the plaintiff's injuries because it *provided* the unsafe equipment. (*Id.* at pp. 223-226.) In so holding, the high court rejected the defendant's contention that it could not be liable for providing the unsafe equipment "because it merely requested, and did not insist, the contractor use the forklift." (*Id.* at p. 225) The court explained that for practical business reasons, the plaintiff was essentially compelled to use the defendant's equipment, and that the defendant had implicitly represented that the equipment was safe. (*Id.* at pp. 225-226.)

This case is different because Verizon did not in any way furnish the chair that was allegedly defective. A Verizon employee *allowed* Kephart to remove the chair from a Verizon facility at *his* request to replace a "worn" chair in the guard shack. This passive act is not enough to hold a hirer liable for injuries suffered by the employee of an independent contractor.

Andrews alternatively argues Verizon affirmatively contributed to her injuries by negligently exercising its retained control over the guard shack. (See *Hooker, supra*, 27 Cal.4th at pp. 201-202.) Andrews relies on facilities supervisor Haggard's testimony that Securitas employees were required to obtain permission from Verizon before bringing new office chairs or supplies into the guard shack. However, mere retention of control over the office equipment in the guard shack is not enough. (See *id.* at p. 209.) Andrews must also raise a triable issue of material fact as to whether Verizon *exercised* the

12

retained control so as to affirmatively contribute to her injuries. (See *id.* at p. 215.) She has proffered no evidence to support this theory.

Andrews argues this case is factually similar to *Ray v. Silverado Constructors* (2002) 98 Cal.App.4th 1120 (*Ray*). In *Ray*, a subcontractor's employee was killed when construction materials fell off a highway overpass and struck him as he cleared debris on the roadway below. (*Id.* at p. 1124.) The Court of Appeal reversed a summary judgment in the general contractor's favor, concluding triable issues of material fact existed as to whether the general contractor retained control over traffic conditions at the jobsite. (*Id.* at p. 1123.) The court reasoned that on the day of the accident, the general contractor was the only party empowered to protect the subcontractor's employees. (*Id.* at pp. 1133-1134.) Specifically, the independent contractor was "barred from undertaking enumerated safety measures without the prior written consent of the general contractor," and therefore the hirer retained *and exercised* control over safety measures at the job site. (*Id.* at p. 1134.)

*Ray* is distinguishable from the present case because Securitas was not contractually precluded from acting to ensure its employees had safe equipment. Andrews presented no evidence that Securitas personnel were prohibited from acquiring a safe replacement office chair. In contrast to *Ray*, where the independent contractor was prohibited without the hirer's advance written consent from erecting a traffic barricade and thus protecting its workers, Securitas personnel had the ability to obtain a replacement chair that was safe for its intended use.

## DISPOSITION

Judgment affirmed.  Appellant to bear respondents' costs on appeal.

HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.