Filed 6/17/24; Certified for Publication 7/15/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| EUGENE BOWEN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>BURNS & MCDONNELL ENGINEERING COMPANY, INC., et al.,<br><br>        Defendants and Respondents. | A166793<br><br>(San Francisco County Super. Ct. No. CGC17561849) |

While working inside a jet fuel tank at the San Francisco International Airport, Eugene Bowen fell from a ladder and was injured. At the time, Bowen was employed by sub-tier independent contractor Team Industrial Services, Inc. (Team). He sued general contractor Burns & McDonnell Engineering Company Inc. (Burns) and subcontractor HMT, LLC (HMT) (collectively defendants)—who hired Team—alleging a premises liability cause of action based on defendants' negligence and negligent supervision.

The trial court granted defendants' respective motions for summary judgment based on the *Privette* doctrine (*Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*)), which limits a hirer's liability for on-the-job injuries sustained by an independent contractor or its workers unless an exception

1

applies. Bowen appeals, arguing triable issues of material fact exist as to whether an exception to the *Privette* doctrine applies. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2017, Burns was the general contractor for a fuel systems improvement project at San Francisco International Airport. Burns hired HMT as a subcontractor to replace the floor of a jet fuel tank; HMT, in turn, retained Team as a sub-tier independent contractor to inspect HMT's welding. Bowen worked for Team; he was tasked with taking radiographic images of the welding work HMT had performed on the jet fuel tank.

Team's contract with HMT required Team to "furnish all material, equipment and labor necessary to perform the work." HMT did not control any of the methods or means by which Team did its work. Due to the potential radiation exposure, only Bowen and designated Team employees were allowed in the jet fuel tank while Bowen was working.

In February 2017, Bowen worked inside the jet fuel tank on two separate days prior to the incident. His job was to capture images of the wall sheets to examine the door welds. Another Team employee, Tom Polkinghorn, worked on the outside of the tank. On February 15, Bowen entered the tank for a third time while Polkinghorn worked on the outside. Before entering the tank and beginning work, both Bowen and Polkinghorn signed the daily "Job Safety Analysis" (JSA) sheet. The JSA required them to list the hazards they observed both outside and inside the tank before starting work. The JSA also included a disclaimer allowing the signatory to stop work "if conditions change and/or the job becomes unsafe." Polkinghorn inspected the exterior of the jet fuel tank and listed both the observed

---

[1] We recite only those facts relevant to the dispositive issues before us.

2

hazards and controls to reduce or eliminate the hazards. Bowen was supposed to inspect the interior of the tank, but Polkinghorn is unsure if Bowen ever did so; nonetheless, Bowen signed and initialed the JSA.

When Bowen began his work inside the tank on February 15, he observed a ladder and scaffolding, which HMT had installed for HMT's own employees to use. HMT did not supply the subject ladder or scaffolding for the use of any sub-tier contractor or Team, nor did it agree to provide such equipment. HMT had not received a request from Bowen or Team to use the ladder and scaffolding, and it did not know Bowen would use them. Bowen did not recall if the ladder and scaffolding had been present during his previous work visits. Bowen also did not recall seeing a "green work permit" on the scaffolding, which would have indicated the scaffolding was built and ready for use. Bowen noticed the ladder was "just tied off at one side at the very top," but he did not shake or test the ladder. On previous projects, Bowen had not used ladders tied off in this manner. Nonetheless, Bowen decided to use the ladder to capture images at a higher elevation. Bowen was wearing a harness with lanyards he clipped to the ladder and scaffolding. The ladder "felt good going up." On his descent, after releasing his lanyard, "the ladder came out from underneath" Bowen; he was about four feet off the ground when he fell. Bowen fractured his hip and sustained other injuries as a result of his fall.

Bowen attributed his fall to the flexible metal floor at the bottom of the fuel tank and the sand on that floor. The floor was made of pieces of metal welded together. When walked on, the surface would "raise up and down like a waterbed," "flex" and "pop and move." There was sand on the floor of the tank, underneath the ladder. Bowen did not notice the sand before he decided to use the ladder.

Bowen received workers' compensation benefits through Team in connection with the incident. He also filed a lawsuit against defendants and others. The operative first amended complaint alleged a single cause of action for premises liability. Bowen averred defendants negligently owned, maintained, and operated premises with dangerous conditions that caused his injuries, including a ladder that was not properly secured to the scaffolding, an unbalanced floor, and debris on the floor.

Defendants filed separate—nearly identical—motions for summary judgment, arguing they did not owe Bowen a duty of care because the *Privette* doctrine applied; any duty of care was properly delegated to Team; and an exception to the general duty of care existed when a danger was open and obvious.

In opposition to the summary judgment motions, Bowen contended there were triable issues of material fact as to whether exceptions to the *Privette* doctrine applied. More particularly, Bowen asserted it was not within the scope of his responsibility to inspect the scaffolding, ladder, and floor of the jet fuel tank which were all concealed unsafe conditions; there were triable issues of fact as to whether defendants actively contributed to his injury when HMT erected scaffolding and a ladder to perform its own welding work; and defendants retained control over the safety of the ladder and floors in the jet fuel tank, failed to warn him of the flexible nature of the steel floor, and represented to Bowen and Team that the ladder tied to the scaffolding was safe.

The trial court granted the motions for summary judgment. The court first found that defendants met their initial burden of demonstrating the *Privette* doctrine applied because they presented evidence that they hired Team to perform work at the work site and Bowen was injured while working

4

for Team. The court then ruled there were no triable issues of material fact as to whether an exception to the *Privette* doctrine applied. With respect to Burns, the court observed that it did not own, install, or tag the ladder or scaffolding, nor did it direct or control the means by which Team did its work. Relative to HMT, the court stated HMT demonstrated it had a contract with Team providing that Team would "furnish all material, equipment, and labor necessary to perform the work." Additionally, HMT presented evidence that it installed the scaffolding and ladder for its own work. Bowen did not dispute these facts or introduce evidence that Burns or HMT directed Teams or Bowen or required them to use HMT's equipment. The court therefore entered judgment for defendants.

## DISCUSSION

Bowen argues the trial court erred in granting defendants' motions for summary judgment because there were triable issues of material fact regarding the applicability of an exception to the *Privette* doctrine. At the trial court and in his opening brief, Bowen invoked three "exceptions" to the *Privette* doctrine—namely, the unsafe concealed condition exception under *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659; the provision of unsafe or defective equipment "exception" under *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219 (*McKown*); and the exercise of retained control exception under *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 (*Hooker*).

At the outset, we observe that Bowen's framing of the exceptions at issue is somewhat flawed because *McKown* did not, in fact, establish a separate and distinct exception to the *Privette* doctrine based on a hirer's provision of unsafe equipment to an independent contractor; rather, *McKown* was a "companion case" to *Hooker* in that it also dealt with the *retained*

5

*control exception.* (See *Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 42 (*Gonzalez*); *Miller v. Roseville Lodge No. 1293* (2022) 83 Cal.App.5th 825, 836 ["furnishing unsafe equipment is simply one example of exercising retained control, rather than its own separate exception to the *Privette* doctrine"].) Further, in his reply brief, Bowen withdraws his contention regarding the unsafe concealed condition exception under *Kinsman v. Unocal Corp.*, *supra*, 37 Cal.4th 659, agreeing with defendants that this exception only applies to landowners. As such, this appeal implicates only the retained control exception to the *Privette* doctrine under *Hooker* and *McKown*.

## I. The *Privette* Doctrine and the Retained Control Exception

Under the *Privette* doctrine, "a hirer is typically not liable for injuries sustained by an independent contractor or its workers while on the job." (*Gonzalez*, *supra*, 12 Cal.5th at p. 41.) As originally articulated, the doctrine was grounded on the principle that it would be unfair for the hirer of an independent contractor to be held liable for injuries to a contractor's employee when the contractor's own liability would be capped by the limits of its workers' compensation coverage. (*Privette*, *supra*, 5 Cal.4th at p. 698.) More recently, our high court has emphasized "delegation" as the "key principle" underlying the *Privette* doctrine, reasoning as follows: "Because the hirer presumptively delegates to the independent contractor the authority to determine the manner in which the work is to be performed, the contractor also assumes the responsibility to ensure that the worksite is safe, and the work is performed safely." (*Gonzalez*, at p. 41.)

However, an exception to the *Privette* doctrine may exist when a hirer fails to effectively delegate all responsibility for workplace safety to the independent contractor. (*Gonzales*, *supra*, 12 Cal.5th at p. 42.) As relevant here, under the retained control exception set forth in *Hooker*, *supra*, 27

6

Cal.4th at page 202, the hirer may be liable to a contractor's employee where the hirer "*exercises . . .* retained control over any part of the contractor's work in a manner that *affirmatively contributes* to the worker's injuries." (*Gonzalez*, at p. 42, italics added.) But " 'passively permitting an unsafe condition to occur rather than directing it to occur does not constitute affirmative contribution.' " (*Degala v. John Stewart Co.* (2023) 88 Cal.App.5th 158, 170 (*Degala*).)

Rather, for the retained control exception to apply, there must be something more—i.e., some indication the hirer *directed* that the contractor perform its work in a certain way or *interfered* with the means and methods by which the work was to be accomplished. (*Hooker, supra,* 27 Cal.4th at pp. 214–215.) For example, in *McKown*, the California Supreme Court imposed liability on a hirer who requested that an independent contractor use the hirer's own defective forklift in performing the contractor's work. (*McKown, supra,* 27 Cal.4th at p. 225.) Additionally, in some instances, an "omission may constitute an affirmative contribution," such as where a hirer promises to undertake a particular safety measure and negligently fails to do so. (*Brannan v. Lathrop Constr. Assocs., Inc.* (2012) 206 Cal.App.4th 1170, 1177 (*Brannan*).)

## II. Standard of Review

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) Under Code of Civil Procedure section 437c, subdivision (a)(1)[2] a "party may move for summary judgment in an action or proceeding if it is

[2] Undesignated statutory references are to the Code of Civil Procedure.

contended that the action has no merit or that there is no defense to the action or proceeding." Such a motion must be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).)

A defendant moving for summary judgment meets its burden of showing a cause of action has no merit if it shows that one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (§ 437c, subd. (p)(2).) Once the defendant has made the required showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to that cause of action or defense. (*Aguilar*, *supra*, 25 Cal.4th at p. 849.)

"In the context of summary judgment, the *Privette* doctrine gives rise to a rebuttable presumption that affects the burden of producing evidence." (*Degala*, *supra*, 88 Cal.App.5th at p. 166.) If the moving party establishes that it hired an independent contractor to perform certain work, and that the injured plaintiff is an employee of that independent contractor, the "burden shifts to the opposing party to come forward with evidence raising a triable issue of fact as to whether an exception to the *Privette* doctrine applies." (*Ibid.*) "Nevertheless, the burden of persuasion remains with the party moving for summary judgment." (*Ibid.*)

In reviewing a trial court's ruling on a motion for summary judgment, we apply a de novo standard of review, "considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained," "liberally constru[ing] the evidence in support of the party opposing summary judgment," and "resolv[ing] doubts concerning the evidence in favor of that party." (*Dore v. Arnold Worldwide, Inc.* (2006)

8

39 Cal.4th 384, 389.) We will find no error in a trial court's grant of summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).)

### III.   Analysis

Here, it is undisputed that the *Privette* doctrine applies, and Bowen bears the burden of raising a triable issue of fact as to the applicability of an exception to the doctrine. (See *Degala, supra,* 88 Cal.App.5th at p. 167.) Bowen fails to meet this burden.

### A.   Retained Control Exception Under *Hooker*

Bowen's contention regarding the applicability of the retained control exception under *Hooker, supra,* 27 Cal.4th 198 is somewhat unclear. Bowen asserts that HMT "failed to meet its burden on summary judgment to show that there was no triable issue of material fact" regarding HMT's retention of control over safety conditions; he further contends HMT "effectively" retained control because it was contractually responsible for the safety of its subcontractors and negligently set up a ladder and scaffolding for Bowen to use.[3] But these arguments erroneously place the burden on HMT to demonstrate the *lack* of a triable issue of material fact when, as stated *ante,* it is *Bowen*'s burden to raise a triable issue of fact as to an exception to the *Privette* doctrine once defendants demonstrate the applicability of that doctrine. (See *Degala, supra,* 88 Cal.App.5th at p. 166.)

Bowen fails to meet this burden as he does not dispute the facts

---

[3] Bowen's arguments regarding the applicability of the retained control exception are directed solely towards HMT and not Burns. As such, we deem waived any assertion of error relative to the trial court's granting of Burns's motion for summary judgment. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–85.)

underlying the trial court's ruling and still points to *no* evidence indicating that defendants affirmatively contributed to his injuries. For example, apart from arguing that HMT "negligently" set up the ladder, Bowen does not present any evidence that HMT directed that he perform his work in a certain way or that it interfered with the means by which he was to accomplish his work. (See *Hooker*, *supra*, 27 Cal.4th at pp. 214–215.) Further, the evidence indicates that HMT did not require Bowen to use the ladder or scaffolding, and that prior to entering the fuel tank Bowen knowingly executed a JSA that listed hazards observed at the work site and authorized him to stop work if he deemed the site or circumstances unsafe. Lastly, with respect to Bowen's argument regarding HMT's contractual responsibility for the safety of its subcontractors, *Hooker* established that this type of contractual obligation does not implicate the retained control exception where there is no evidence the hirer *affirmatively contributed* to the worker's injuries. (See *Hooker*, at p. 202.)

*Brannan*, *supra*, 206 Cal.App.4th 1170, cited by defendants and decided by our colleagues in Division One, is instructive. In *Brannan*, the hirer scheduled work at the project site in a way that resulted in the plaster subcontractor's scaffold being left in an area where the masonry subcontractor had to work. (*Id.* at pp. 1173, 1174.) The masonry subcontractor asked the general contractor when the plaster scaffold would be removed but otherwise believed its crews could work around the scaffold. (*Id.* at p. 1174.) One rainy day, one of the masonry subcontractor's employees slipped and fell when he tried to cross over the scaffold to lay masonry in an area underneath it. (*Ibid.*) No one told the employee to take this route, but he believed crossing through the scaffold was the only way to access his work area. (*Ibid.*) The employee sued the general contractor who successfully

10

moved for summary judgment. (*Id.* at p. 1172.)

The Court of Appeal affirmed, finding no triable issues of material fact. (*Brannan*, *supra*, 206 Cal.App.4th at p. 1173.) The court noted that though the employee argued he was left with no other option than to climb over the scaffold, the general contractor did not direct the employee's work or tell him to gain access under the scaffold in that manner. (*Id.* at pp. 1178–1179.) Clarifying it would be a "different case" if the masonry subcontractor had asked that the scaffold be removed for safety, the general contractor had promised to do so, and then negligently failed to follow through, the Court of Appeal found that the general contractor's act of allowing the scaffold to remain in place while the masonry work proceeded was not an exercise of retained control over safety. (*Id.* at p. 1180.) Accordingly, the Court of Appeal found the trial court properly granted summary judgment in favor of the general contractor. (*Ibid.*)

So too here. Bowen has presented no evidence HMT directed his work or told him to use the scaffold it left in place for its own employees. In fact, the evidence indicates that HMT was completely unaware Bowen would use its ladder and scaffold; Bowen had not used a ladder or scaffold on his prior work visits; and Bowen himself stated he chose to use the ladder for his own convenience so he would not have to repeatedly move his camera to capture images of the horizontal seam in the jet fuel tank. Nor has Bowen presented evidence that he or Team asked HMT to remove the scaffold, that HMT agreed to do so, and that HMT then negligently failed to follow through. (See *Brannan*, *supra*, 206 Cal.App.4th at p. 1180.)

Accordingly, Bowen fails to raise a triable issue of material fact as to whether HMT exercised retained control over Team's work in a manner that affirmatively contributed to Bowen's injuries.

11

## B. Retained Control Exception Under *McKown*

Bowen further contends that HMT failed to demonstrate the absence of a triable issue of fact concerning HMT's negligent provision of unsafe equipment. More particularly, Bowen asserts the trial court erroneously held the contract between HMT and Team required Team to furnish all of its own materials for Team's work on the project, including items such as scaffolding and ladders, and that there were triable issues of material fact as to whether HMT "effectively" requested or required him to use HMT's ladder and scaffolding when it hired him to capture radiographic images of the door welds in the jet fuel tank. In reply, Bowen adds that he was required to use the ladder and scaffold, and HMT's use of the green tag system for its scaffolding demonstrates a triable issue as to whether HMT requested that Bowen use HMT's scaffold. We are not persuaded.

First, Bowen again misstates the legal standard. As defendants have demonstrated the application of the *Privette* doctrine, the burden has shifted to Bowen to demonstrate a triable issue of material fact triggering a *Privette* doctrine exception. (See *Degala*, *supra*, 88 Cal.App.5th at p. 166.) Bowen fails to do so. A triable issue exists only if the "evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, 25 Cal.4th at p. 845.) Further, "A party cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

Here, Bowen presents no evidence HMT asked or directed him to use the ladder and scaffold that HMT set up in the jet fuel tank for its own work.

12

Further, the contract between the parties evidences that Team was required to furnish its own equipment and Bowen's execution of the JSA on the incident date indicates Team maintained responsibility for its own safety measures. It also cannot be reasonably concluded that HMT's mere use of a safety tag system for its own scaffolding was tantamount to requesting that Team use HMT's equipment. A conclusion to the contrary would stretch the concept of a "request" beyond absurdity.

Similarly, no evidence supports Bowen's contention that HMT required him to use its ladder and scaffolding. Bowen notes that at deposition, Burns's person most knowledgeable (§ 2025.230) stated that he "speculate[d]" that Team may have needed to access HMT's scaffold to take the radiographic images needed. But such speculation is insufficient to create a triable issue of material fact. (See *LaChapelle v. Toyota Motor Credit Corp.*, *supra*, 102 Cal.App.4th at p. 981.) Further, even if Team felt it may have needed to use the scaffold to perform its own work, this would not amount to an exercise of retained control where HMT did not instruct Team to use the scaffold. (See *Brannan*, *supra*, 206 Cal.App.4th at pp. 1178–1179.)

Bowen's reliance on *Tverberg v. Fillner Construction* (2012) 202 Cal.App.4th 1439 is also misplaced. In *Tverberg*, the plaintiff was hired to construct a metal canopy over some fuel-pumping units, while another subcontractor was hired to dig four-foot wide holes nearby and erect eight "bollards" (i.e., concrete posts) to prevent vehicles from colliding with the fuel dispensers. (*Id.* at p. 1442.) Defendant failed to adequately mark or cover the holes, despite plaintiff's request. (*Id.* at p. 1443.) Plaintiff subsequently fell into one of the holes and was injured. (*Ibid.*) Under these circumstances, the *Tverberg* court found there to be triable issues of material fact as to whether the hirer retained control over the worksite given that it directed the

13

digging of holes in the area where plaintiff was working and affirmatively assumed responsibility for the safety of workers by marking the bollard holes, among other things.  (*Id.* at p. 1448.)

Contrary to Bowen's argument, the partially secured ladder and sand on the floor do not present similar issues of material fact here.  In contrast to *Tverberg*, there is no evidence HMT exercised any retained control over the worksite that affirmatively contributed to Bowen's injuries.  Rather, the evidence demonstrates HMT completely vacated the jet fuel tank area when Bowen was capturing his radiographic images due to the radiation risks, did not direct or interfere with Bowen's work in any way, and did not agree or undertake to provide Team with any materials for its work.

In sum, Bowen fails to raise a triable issue of material fact as to whether the retained control exception to the *Privette* doctrine applies.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

_____
DESAUTELS, J.

We concur:


_____
STEWART, P.J.


_____
MILLER, J.

*Bowen v. Burns & McDonnell* (A166793)

15

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| EUGENE BOWEN,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>BURNS & MCDONNELL<br>ENGINEERING COMPANY, INC.,<br>et al.,<br><br>     Defendants and Respondents. | A166793<br><br>(San Francisco County<br>Super. Ct. No. CGC17561849)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION** |

**BY THE COURT:**

The opinion in the above-entitled matter filed on June 17, 2024 was not certified for publication in the Official Reports. For good cause, the request for publication by Association of Southern California Defense Counsel is granted.

Pursuant to California Rules of Court, rule 8.1105, the opinion in the above-entitled matter is ordered certified for publication in the official Reports.

Dated: _____          _____P.J.

1

Trial Court:                          San Francisco County Superior Court

Trial Judge:                          Hon. E. A. Karnow


Attorneys for Plaintiff               Zarmi Law
and Appellant:                        David Zarmi


Attorneys for Defendants              Christensen Hsu Sipes LLP
and Respondents:                      Jennifer K. Stinnett