Filed 6/18/25  Johnson v. Crew Builders CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAKE JOHNSON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CREW BUILDERS,<br><br>    Defendant and Respondent. | D083549<br><br><br><br>(Super. Ct. No. 37-2021-00033025-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Marcella O. McLaughlin, Judge.  Affirmed.

Hoffman & Forde, Michael Dicks; Berding & Weil, Anne L. Rauch and Trinette S. Sachrison, for Plaintiff and Appellant.

Devaney Pate Morris & Cameron, William C. Pate and Lesley A. Ionescu, for Defendant and Respondent.

Jake Johnson appeals from an order granting summary judgment entered in favor of Crew Builders (Crew) based on the *Privette* doctrine.  (See *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*) [limiting liability of hiring entities for injuries sustained by employees of independent contractors].)  Johnson was severely injured while working on a construction project, which involved improvements to a building owned by Property

1

Reserve, Inc. (PRI) and managed by CBRE. Crew was the general contractor, hired by PRI and CBRE; PCF Electric (PCF) was an electrical subcontractor, hired by CBRE; and Johnson was an electrician, hired by PCF. In a related case, this court granted a petition for writ of mandate directing the court to grant summary judgment to PRI and CBRE based on the *Privette* doctrine. (See *CBRE v. Superior Court* (2024) 102 Cal.App.5th 639 (*CBRE*).) Because we conclude Crew is not differently situated in any material way, we likewise affirm the judgment as to Crew.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts surrounding the incident that led to Johnson's injury are set forth in our previous opinion in *CBRE*. (See *CBRE, supra,* 102 Cal.App.5th at pp. 642−645.) We summarize them only briefly here.

Johnson was electrocuted while working as an electrician on a commercial suite remodel project, managed by Crew. Crew believed permits were required for the project, but the building owner, PRI, instructed Crew not to obtain them. (*Id*. at pp. 643−644.) In soliciting bids from subcontractors, Crew indicated the project would not be permitted. (*Id*. at p. 644.) The permitting process would have required updated electrical circuit maps and line drawings. Johnson contends those drawings would have indicated the presence of a 277-volt wire involved in his injury.

On the day of the incident, Johnson was working on an outlet box attached to a 120-volt electrical circuit. (*CBRE, supra,* 102 Cal.App.5th at p. 644.) The 120-volt circuit was powered down, but a separate 277-volt circuit had been turned on the day before, after Johnson finished working on the lighting powered by the 277-volt circuit. (*Ibid*.)

While working on the 120-volt outlet, Johnson saw a junction box cover labeled "120-volt" on the floor and an open junction box in the ceiling above,

2

so he went to replace the cover. (*CBRE, supra,* 102 Cal.App.5th at p. 644.) He knew the 277-volt power circuit was on, because the overhead lighting had been turned on and temporary lighting had been removed the day before, but he did not know that the junction box contained wiring for both the 277-volt and 120-volt circuits. (*Ibid.*) While replacing the cover, Johnson touched a live 277-volt wire. (*Ibid.*) He was electrocuted and fell off the ladder, causing significant injuries. (*Ibid.*)

Jake filed a complaint against PRI, CBRE, Crew and PCF. In the operative first amended complaint, he asserted causes of action for negligence, negligent employment/supervision, negligent infliction of emotional distress, failure to maintain a safe work environment, failure to follow OSHA regulations, failure to abide by city building codes, failure to provide safe and non-hazardous conditions, and failure to follow the doctrine of premises liability against all named defendants.

The defendants each filed motions for summary judgment based on the *Privette* doctrine. The trial court initially denied PRI and CBRE's motion based on a finding that there was a triable issue of fact as to whether PRI and CBRE hired Crew as the general contractor before or after Johnson's injury. The same issue did not impact Crew, and the trial court granted Crew's motion for summary judgment based on its conclusion that the *Privette* doctrine barred Johnson's claims against Crew.

PRI and CBRE field a petition for writ of mandate, asking this court to address the denial of their summary judgment motions before trial. (See *CBRE, supra,* 102 Cal.App.5th 639.) This court concluded there was no triable issue of fact as to whether PRI and CBRE had hired Crew in a manner sufficient to invoke the *Privette* doctrine prior to Johnson's injury, and, in a divided decision, that the *Privette* doctrine shielded PRI and CBRE

3

from liability as a matter of law.  (*CBRE,* at pp. 650−658; see also *id.* at pp. 659−664 (dis. opn. of Kelety, J.) [a jury should decide whether PRI and CBRE retained control over the permitting process].)  Accordingly, this court issued a writ of mandate directing the trial court to vacate its order denying PRI's and CBRE's motion for summary judgment and enter a new order granting the motion.  (*Id.* at p. 659 (maj. opn.).)

Meanwhile, Johnson filed a timely notice of appeal of the related judgment entered in favor of Crew.

## II.    DISCUSSION

Johnson asserts, as he did in *CBRE,* that two common exceptions to the *Privette* doctrine—retained control and a concealed hazardous condition— apply here and preclude application of the doctrine to Crew.  He contends Crew retained control of the permitting process, and if it had proceeded with permitting as required, the process would have revealed that there was a 277-volt wire in the junction box that ultimately led to his injury.  In addition, he contends Crew prematurely energized the overhead lighting in the suite so it could move the previously provided temporary lighting to another project, without following the proper protocols and without providing Johnson with appropriate safety gear.

As we explained in *CBRE*: "In *Privette*, the California Supreme Court recognized the common law principle that 'a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work.' (*Privette, supra*, 5 Cal.4th at p. 693.)  The doctrine presumes that the hirer of an independent contractor 'ordinarily delegates to that independent contractor all responsibility for the safety of the contractor's workers.' (*Sandoval v. Qualcomm Incorporated* (2021) 12 Cal.5th 256, 264 (*Sandoval*).)  This

4

presumption 'is grounded in two major principles:  first, that independent contractors by definition ordinarily control the manner of their own work; and second, that hirers typically hire independent contractors precisely for their greater ability to perform the contracted work safely and successfully.' (*Id*. at p. 269.)  Thus, we generally presume 'that a hirer delegates all control over the contracted work, and with it all concomitant tort duties, by entrusting work to a contractor.' (*Id*. at p. 270.)" (*CBRE, supra*, 102 Cal.App.5th at p. 646.)

"However, 'that presumption gives way to two recognized exceptions: where the hirer . . . withholds critical information regarding a concealed hazard . . . or retains control over the contractor's work and actually exercises that control in a way that affirmatively contributes to the worker's injury.' (*Sandoval, supra*, 12 Cal.5th at p. 264.)" (*CBRE, supra*, 102 Cal.App.5th at p. 646.)

"A trial court shall grant a motion for summary judgment 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).)" (*CBRE, supra*, 102 Cal.App.5th at p. 646.)

"As the moving party, [Crew] had the initial burden of establishing that Johnson . . . either could not prove or that there was a complete defense to each cause of action as alleged in the complaint.  (§ 437c(p)(2); *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850, 853.)  Assuming [Crew] met that burden by asserting that the *Privette* doctrine immunized [it] against all stated causes of action, the burden then shifted to Johnson to present evidence demonstrating a triable issue of material fact:  in other words, evidence that would allow a reasonable trier of fact to make a factual finding

5

in favor of Johnson by concluding one of the *Privette* doctrine's exceptions applies." (*CBRE, supra*, 102 Cal.App.5th at p. 646.)

As we did in *CBRE*, "[w]e review the trial court's order denying [Crew's] motion for summary judgment under the same legal standard as the trial court and independently assess the correctness of the ruling.)" (*CBRE, supra*, 102 Cal.App.5th at p. 647.)

Addressing the failure to disclose a concealed condition exception first, the majority in *CBRE* agreed with the trial court that Johnson presented " 'no evidence . . . suggesting PCF—an electrical subcontractor—could not have reasonably discovered the hazardous condition,' " regardless of whether the condition was the lack of permitting or the presence of the 277-volt wire. (*CBRE, supra*, 102 Cal.App.5th at pp. 650−651; see also *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 664 [hirer can be liable for injury under concealed condition exception only if "the contractor did not know and could not have reasonably discovered this hazardous condition"].) The same is true here. In fact, the trial court's statement, quoted by the majority in *CBRE*, was made in the context of Crew's motion for summary judgment. Neither PCF nor Johnson was any less able to discover the lack of permits or the 277-volt wire based on Crew's conduct as opposed to PRI and CBRE's. Johnson presents no new evidence to the contrary.

This leaves us with the question of whether Johnson raised a triable issue of fact regarding the retained control exception to the *Privette* doctrine announced in *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 (*Hooker*). (See *id*. at p. 210 [exception applies where "the hirer *exercised* the control that was retained in a manner that *affirmatively* contributed to the injury of the contractor's employee"].)

6

The majority in *CBRE* concluded that PRI and CBRE's instruction that the project proceed without permits was not sufficient to invoke the *Hooker* exception because "permits were not part of the contracted work." (*CBRE, supra*, 102 Cal.App.5th at p. 653.) The majority reasoned, "[PRI and CBRE] did not retain control over whether, when, and how to pull permits as part of the project; everyone simply agreed from the beginning permits were not part of the project at all." (*Ibid*.) Moreover, the majority concluded that none of PRI or CBRE's actions precluded Johnson or PCF from taking independent steps that could have prevented Johnson's electrocution. (*Id*. at p. 655.) As with the concealed condition exception, the same analysis applies to Crew. Regardless of who made the decision, PRI, CBRE, Crew, and PCF all knew the project was unpermitted. Just like Crew, PCF could have declined to work on the unpermitted project and/or could have taken additional steps to ensure the safety of its employees in the absence of permits.

Johnson asserts the permits were legally required, not optional, and Crew's failure to obtain them was presumptively negligent. The majority was not persuaded by similar arguments in *CBRE*. (*CBRE, supra*, 102 Cal.App.5th at p. 658.) Rather, they concluded "that those who enter into such agreements are held accountable in appropriate ways such that our decision will not encourage such agreements to proliferate." (*Ibid*.) As the majority explained further, "Johnson's return acknowledges, a person who violates the permit requirements in the San Diego Land Development Code is strictly liable for a misdemeanor under the San Diego Municipal Code, and can be subjected to fines, custody, injunctive relief, civil penalties, abatement, and other reasonable mitigation measures. (See San Diego Mun. Code, §§ 121.0311–121.0312.)" (*CBRE, supra*, 102 Cal.App.5th at p. 658.) And, as the majority noted, PRI and CBRE acknowledged the liability applies equally

7

to building owners, like them, and general contractors, like Crew. (*Ibid.*) We see no means by which to distinguish Crew's willingness to proceed without permits from PRI and CBRE's direction that Crew do so, at least not within the context of a *Privette* analysis.

Beyond the permitting issue, Johnson asserts an additional basis for imposing the *Hooker* retained control exception on Crew. He argues Crew retained control by prematurely re-energizing the suite so it could move its temporary lighting to another project.

As an initial matter, it is not apparent this was Crew's decision, as Johnson asserts. Danny Machado from Crew testified that Crew removed the temporary lighting *after* "they" (presumably, PCF), turned the 277-volt circuit for the overhead lights back on. Johnson told Machado he finished all the lighting work the day before and was not working on any 277-volt circuits on the day of the incident. As Johnson concedes, PCF was responsible for the electrical safe-off. On the other hand, as Johnson points out, there is at least some question regarding Crew's role in maintaining the power schedule for the project.

Regardless, Johnson knew the 277-volt circuit was on when he went to the suite to work on the day of his injury. Specifically, he knew the 277-volt circuit was related to the lighting in the suite, which he had previously worked on, and he knew the lighting was on that day. And, as already discussed, PCF knew the project was not permitted and that updated circuit maps had not been drawn. Yet, neither Johnson nor PCF took additional precautions that both knew, or reasonably should have known, were necessary when working in an energized environment.

Moreover, Johnson presents no evidence suggesting Crew required him to work in the re-energized setting or to deviate from his stated task of

8

finishing a 120-volt outlet to repair the junction box without first addressing the re-energized environment.  (See *Sandoval, supra,* 12 Cal.5th at pp. 279–282 [hirer's control over power-down process did not constitute retained control over contracted work where contractor had "ample freedom within the scope of its entrusted work to accommodate the presence of the live circuits effectively in its own manner"]; Cf. *Tverberg v. Fillner Construction, Inc.* (2012) 202 Cal.App.4th 1439, 1443 [general contractor ignored request to address unsafe situation].)  To the extent Johnson asserts he did not know there would be a 277-volt circuit in the junction box when he went to replace the cover, this brings us back to the permitting issue that the majority addressed in *CBRE*.  Accordingly, the additional factor of Crew's involvement in re-energizing the suite does not compel a different result in this case.

### III.  DISPOSITION

The judgment is affirmed.  Crew Builders is awarded costs on appeal.

KELETY, J.

WE CONCUR:

O'ROURKE, Acting P. J.

CASTILLO, J.

9

Kelety, J., concurring.

I write separately to clarify that I continue to believe a jury should decide whether Property Reserve, Inc. (PRI) and CBRE—and, in this case, Crew—retained control over the construction project when they agreed not to obtain legally necessary permits, as stated in my dissent in the *CBRE v. Superior Court* (2024) 102 Cal.App.5th 639 (*CBRE*). I join the majority in this case because I agree that there are no material differences in Crew's role that would compel a different result than the majority decision in *CBRE*. Although Crew could have declined to participate in the project without permits, it followed PRI and CBRE's instructions as to the absence of permits, and, in my view, Crew should not be held accountable if PRI and CBRE are not.

KELETY, J.

1