Filed 9/20/24  Luna v. Crane Development Corporation CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DAVID LUNA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CRANE DEVELOPMENT CORPORATION,<br><br>    Defendant and Respondent. | D081692<br><br><br><br>(Super. Ct. No. 37-2020-00025179-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Affirmed.

Gomez Trial Attorneys, John H. Gomez, Rachel M. Garrard and Samuel G. Lynn; Arendsen Braddock and Hamilton E. Arendsen, for Plaintiff and Appellant.

Procopio, Cory, Hargreaves & Savitch, Rosemary K. Robinson and Nicholas W. Fortino, for Defendant and Respondent.

David Luna appeals from a judgment entered after the trial court granted Crane Development Corporation (Crane) summary judgment based on the *Privette* doctrine—which generally protects hirers from liability for

injuries sustained by employees of an independent contractor on a worksite. (See *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*).)

Luna was injured when he fell off scaffolding while working at a construction site. Crane, the general contractor, hired Luna's employer, Stucco Specialists, Inc. (SSI), as a subcontractor, and SSI contracted with North County Scaffold & Plank, Inc. (NCS) to erect the scaffold. Luna received workers compensation benefits through his employer, SSI, but also sued Crane and NCS for negligence. As he did in the trial court, Luna asserts there is a triable issue of fact as to whether Crane retained control over the maintenance of the scaffolding in a manner that contributed to his fall, and therefore his lawsuit falls under the *Hooker* exception to the *Privette* doctrine. (See *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 202 (*Hooker*).) We agree with the trial court that Luna has not established a triable issue of material fact under *Hooker* and affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Crane was the general contractor on the construction project for a four-story multi-unit residential building in Irvine. Crane hired SSI to perform plastering and stucco services on the project. Luna worked as a plasterer for SSI.

The contract between Crane and SSI specified that SSI would provide "all labor, material, scaffolding, equipment, tools, adequate supervision and business licenses necessary to perform the work of lath and plaster." It stated further that SSI was to "inspect and maintain scaffold daily," and "remove [its] scaffolding upon direction of [the] on-site superintendent." SSI contracted with NCS to provide the labor and equipment to erect the necessary scaffolding on the exterior of the building. The contract specified

2

that the scaffolding would consist of three-foot wide frames with guardrails and planks as needed.

On August 8, 2018, Luna was applying plaster to the inside of balcony areas on the fourth floor of the building and used the scaffolding to move from one balcony to the next. While attempting to step onto a balcony from the scaffolding, Luna lost his balance and fell backwards towards the mid-rail of the scaffolding. The mid-rail came loose and Luna fell approximately 48 feet to the ground. He sustained multiple serious injuries in the fall and spent a week in the hospital.

Luna filed a complaint against Crane and NCS for negligence. He alleged NCS was negligent in its construction of the scaffolding, and Crane was negligent because it "did not regularly inspect the scaffolding constructed at the work site, as required." Crane and NCS each filed answers in which they generally denied the allegations in the complaint and asserted various affirmative defenses. Each also filed a cross-complaint for indemnity against the other.

In November 2020, Crane filed a motion for summary judgment and/or summary adjudication. Crane relied on *Privette* to argue that, as the hirer of an independent contractor that employed Luna, Crane did not owe any duty to Luna. Crane asserted Luna did not dispute that he received workers' compensation benefits through SSI as a result of the work-related injury, and there was no evidence that Crane retained control over SSI's work in a manner that affirmatively contributed to Luna's injury as required by *Hooker*. (See *Hooker, supra,* 27 Cal.4th at p. 202.) Crane provided a separate statement of undisputed facts, and a compendium of evidence, which included, among other items, certain of Luna's discovery responses, and excerpts from several deposition transcripts.

3

Luna and NCS each opposed the motion. Each filed their own response to Crane's separate statement of undisputed facts, and included their own statement of material facts in dispute. Each asserted there were triable issues of fact as to whether the *Hooker* exception applied, and specifically, whether Crane retained control over safety at the project site in a manner that affirmatively contributed to Luna's injuries. (See *Hooker, supra,* 27 Cal.4th at p. 202.) They each provided evidence in support of their oppositions, including portions of deposition transcripts and other documents that Crane produced during discovery. Crane responded to each separate statement of disputed facts, and objected to much of the evidence submitted by both Luna and NCS.

After hearing argument from the parties, the trial court granted Crane's motion for summary judgment. It found Crane was not liable for Luna's injuries under the *Privette* doctrine because Luna was an employee of a subcontractor, and neither Luna nor NCS provided evidence sufficient to establish a triable issue of fact as to whether Crane retained control over safety conditions at a worksite in a manner that affirmatively contributed to Luna's injuries. The trial court did not rule on any of Crane's evidentiary objections at the hearing or in the written order.

Shortly after the trial court entered judgment for Crane, Luna filed a motion for reconsideration. He asserted the recently published opinion in *Brown v. Beach House Design & Development* (2022) 85 Cal.App.5th 516 (*Brown*) supported his position because there, the appellate court found the plaintiff established a triable issue of material fact as to whether the general contractor fully delegated the duty to maintain the scaffolding in a safe condition to the subcontractor responsible for erecting the scaffolding. (*Id.* at

4

p. 534.)  The trial court found it lacked jurisdiction to hear the motion for reconsideration.

Luna filed a timely notice of appeal.[1]

## II.    DISCUSSION

Luna asserts the trial court erred by granting summary judgment because there was evidence Crane retained control over safety at the project site by inspecting the scaffolding each day.  He asserts further that Crane allowed various subcontractors to use and alter the scaffolding and made its own negligent repairs, thereby affirmatively contributing to his injury.  As we explain, the evidence does not support many of Luna's assertions, and we find no error in the trial court's ruling.

### A.    *The Privette Doctrine and Exceptions to the Doctrine*

In *Privette*, the California Supreme Court recognized both the common law principle, "a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work," and the "many exceptions to this general rule" the courts have developed over the years.  (*Privette, supra,* 5 Cal.4th at p. 693.)  Since then, courts have referred to the general rule that a hirer is not liable for injuries resulting from the work of an independent contractor as the *Privette* doctrine.  More recently, our high court has recast the primary rationale behind the *Privette* doctrine in terms of delegation.  (See *Sandoval v. Qualcomm Inc.* (2021) 12 Cal.5th 256, 270 (*Sandoval*).)

In *Sandoval*, the Court considered the *Privette* doctrine and exceptions in the context of a hirer's liability for injuries sustained by an electrician while working for a contractor on the hirer's premises.  The Court began by

---

[1]    NCS also filed a timely notice of appeal and an opening brief, but subsequently moved to dismiss its appeal.

reiterating, "[s]trong public policy considerations readily acknowledged in our past decisions generally support a straightforward presumption about the responsibilities of hirers and contractors for worker injuries in situations like this: A person or entity hiring an independent contractor (a 'hirer') ordinarily delegates to that independent contractor all responsibility for the safety of the contractor's workers." (*Sandoval, supra,* 12 Cal.5th at p. 264.)

As the Court explained further, the presumption that a hirer delegates to an independent contractor the responsibility, and thus the liability, to do work safely, "is grounded in two major principles: first, that independent contractors by definition ordinarily control the manner of their own work; and second, that hirers typically hire independent contractors precisely for their greater ability to perform the contracted work safely and successfully." (*Sandoval, supra,* 12 Cal.5th at p. 269.) "Because we typically expect contractors to perform the contracted work more safely than hirers, we have endorsed a 'strong policy' of presuming that a hirer delegates all control over the contracted work, and with it all concomitant tort duties, by entrusting work to a contractor." (*Id.* at p. 270.)

The Court also recognized "that presumption gives way to two recognized exceptions: where the hirer either withholds critical information regarding a concealed hazard [citation]; or retains control over the contractor's work and actually exercises that control in a way that affirmatively contributes to the worker's injury." (*Sandoval, supra,* 12 Cal.5th at p. 264.) "Sometimes a hirer intends to delegate its responsibilities to the contractor in principle but, by withholding critical safety information, fails to effectively delegate its responsibilities in practice; or a hirer delegates its responsibilities only partially by retaining control of certain activities directly related to the contracted work. When such situations arise, the

6

*Privette* doctrine gives way to exceptions." (*Id.* at p. 271.) As the *Sandoval* Court pointed out, the first exception was articulated in *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, and the second in *Hooker, supra,* 27 Cal.4th 198. (*Sandoval, supra,* 12 Cal.5th at p. 271.)

**B.** ***Review of Trial Court's Denial of Summary Judgment***

A trial court shall grant a motion for summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc. § 437c, subd. (c).)

As the moving party, Crane had the initial burden of establishing either that Luna could not prove or that it had a complete defense to Luna's sole cause of action for negligence. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 853.) Assuming Crane met its burden by asserting application of the *Privette* doctrine, the burden then shifted to Luna (and NCS) to present evidence demonstrating a triable issue of material fact, meaning the evidence would allow a reasonable trier of fact to make a factual finding in favor of Luna, for example, by concluding Crane was subject to one of the recognized exceptions to *Privette.* (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar,* at pp. 843, 850.)

We review the trial court's order granting Crane's motion for summary judgment under the same legal standard as the trial court and independently assess the correctness of the ruling. (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 231; *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 326.) "[W]e examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th

446, 460.) Where, as here, the motion is based primarily on the application of the *Privette* doctrine, we consider whether Crane met its initial burden to establish application of the *Privette* doctrine, and whether Luna then presented admissible evidence sufficient to establish a triable issue of fact as to a recognized exception. (See *Alvarez v. Seaside Transportation Services LLC* (2017) 13 Cal.App.5th 635, 643–644, 646.)

Notwithstanding this de novo standard of review, as with any appeal, we presume the lower court's ruling is correct and indulge all presumptions and inferences to support the ruling. (*Meridian Financial Services v. Phan* (2021) 67 Cal.App.5th 657, 684.) "Because it is [Luna's] burden to affirmatively demonstrate error, [he] must provide citations to the appellate record directing the court to the evidence supporting each factual assertion." (*Ibid.*; Cal. Rules of Court, rule 8.204(a)(1)(C).) We are "not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived." (*Meridian,* at p. 684.)

### C.   *Luna Has Not Established Error on Appeal*

Luna asserts there is a triable issue of material fact as to whether Crane retained control over safety at the worksite, including the responsibility for daily inspections of the scaffolding, and exercised that control in a negligent manner, affirmatively contributing to his injury. Crane renews its evidentiary objections and asserts Luna has not presented evidence sufficient to establish a triable issue of material fact.

Before turning to the merits, we briefly address Crane's evidentiary objections. Crane raised 77 objections to the evidence Luna submitted and an additional 40 objections to the evidence NCS submitted in opposition to

8

Crane's motion for summary judgment. The trial court did not rule on the objections in its tentative ruling, and Crane addressed them only in passing during argument. The trial court then confirmed its tentative, granting Crane's motion for summary judgment, again without addressing the objections. Crane purports to renew many of these objections on appeal, and does so by providing a list of documents which it asserts were not properly authenticated and a separate bullet point list of renewed objections. We need not, and expressly do not, decide if the trial court erred by failing to rule on or implicitly overruling Crane's evidentiary objections, because doing so would not change the result in this case. As we explain next, even if we consider all the evidence in the record, we conclude Luna has not met his burden to establish a triable issue of material fact or error on appeal.[2]

Turning to the merits, Luna does not dispute that the *Privette* doctrine generally protects general contractors like Crane from liability based on injuries sustained by employees of independent contractors, like himself. He asserts there is a triable issue of fact as to whether Crane falls under the retained control exception to *Privette* originally set out in *Hooker*, and further refined in *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219 (*McKown*) and, more recently, *Brown, supra,* 85 Cal.App.5th 516.

Hooker was a crane operator, employed by a general contractor hired by the California Department of Transportation (Caltrans) to construct an overpass. (*Hooker, supra,* 27 Cal.4th at p. 202.) Hooker would regularly

---

[2] Crane also asserts Luna cannot rely on evidence submitted by NCS in the trial court because NCS is not a party to the present appeal. The authority Crane provides does not support its position and we likewise decline to exclude evidence submitted by NCS in the trial court. (See, e.g., *Truong v. Nguyen* (2007) 156 Cal.App.4th 865, 882 ["Generally, documents and facts that were not presented to the trial court and which are not part of the record on appeal, cannot be considered on appeal"].)

retract the outriggers—hydraulic legs that extend from a crane to provide a stable base—to allow other construction vehicles to pass on the narrow overpass. (*Ibid*.) The crane tipped over while the outriggers were retracted, and Hooker died as a result. (*Ibid*.) Hooker's widow sued Caltrans and alleged that it negligently retained control over jobsite safety. (*Id*. at p. 203.) She relied on a Caltrans construction manual, which gave Caltrans "authority to set compliance schedules for the correction of dangerous conditions and to shut down affected operations until the dangerous conditions were corrected," and asserted a Caltrans representative observed Hooker retracting the outriggers and knew that the crane was unstable without them but failed to intervene to correct the dangerous condition. (*Id*. at pp. 202–203.)

The trial court granted Caltrans summary judgment based on *Privette*, and the Court of Appeal reversed. The California Supreme Court granted review to address the validity of the negligent exercise of retained control theory. (*Hooker, supra,* 27 Cal.4th at p. 203.) The Court rejected the notion that a hirer could be liable "merely because [it] retained the ability to exercise control over safety," and concluded, instead, "the imposition of tort liability on a hirer should depend on whether the hirer *exercised* the control that was retained in a manner that *affirmatively* contributed to the injury of the contractor's employee." (*Id*. at p. 210.) Applying this rule, the Court affirmed the summary judgment, and explained: "[Hooker] failed to raise triable issues of material fact as to whether [Caltrans] actually exercised the retained control so as to affirmatively contribute to the death of [her] husband. While the evidence suggests that the crane tipped over because the crane operator swung the boom while the outriggers were retracted, and that the crane operator had a practice of retracting the outriggers to permit

10

construction traffic to pass the crane on the overpass, there was no evidence Caltrans's exercise of retained control over safety conditions at the worksite affirmatively contributed to the adoption of that practice by the crane operator. There was, at most, evidence that Caltrans's safety personnel were aware of an unsafe practice and failed to exercise the authority they retained to correct it." (*Hooker,* at p. 215.)

The same is true in this case. Luna has not presented evidence sufficient to establish Crane's exercise of retained control over safety conditions at the worksite affirmatively contributed to Luna's injury. Rather, at most, Luna has presented evidence that at least certain of Crane's safety personnel "were aware of an unsafe practice and failed to exercise the authority they retained to correct it." (*Hooker, supra,* 27 Cal.4th at p. 215.)

Larry Trujillo worked for Crane as the senior superintendent on the project. As Luna points out, Trujillo agreed that he was generally in charge of everyone's safety on the project. But in *Hooker,* the Court rejected the notion that retaining *the ability* to exercise control over safety, in general, was enough to establish an exception to *Privette.* (*Hooker, supra,* 27 Cal.4th at p. 210.) And here, Trujillo clarified he meant that he would check in with the different foremen and confirm whether they had any questions or concerns about safety.

Trujillo also conceded that he saw the plaster crew move the planks on the scaffolding to reach different places, but he explained that he did not know "if they had permission internally to alter the scaffold within their organization." As Luna concedes, SSI contracted with NCS to provide the scaffolding and agreed to inspect and maintain it daily. Trujillo, or Crane's, mere knowledge of any unsafe practices that SSI employed is not sufficient to

establish retained control in a manner that affirmatively contributed to Luna's injury.

Luna also relies on the testimony of Eric Wilson, the assistant superintendent for Crane. Wilson testified that, although part of his job was maintaining worksite safety, he only did a visual inspection of the scaffolding for obvious defects. He explained that it was common practice for workers to alter the scaffolding, even if they were not supposed to, and said that Crane had spoken to or reprimanded workers, and particularly those working for the stucco company, for making alterations to the scaffolding, including moving planks and railings.

Luna asserts, "even if Crane intended at the outset to entrust [SSI] with the work of inspecting, maintaining, and repairing the scaffold, Crane *also* exercised daily responsibility over those tasks." But that fact is also insufficient to confer liability on Crane. Even if Crane retained some control over safety in general, Crane's failure to correct the unsafe practices of the subcontractor, SSI, and its employees, with respect to the scaffolding is not a basis for liability. (See *Hooker, supra,* 27 Cal.4th at p. 215.) SSI had an obligation to inspect the scaffolding each day, and to ensure the scaffolding it provided, through a secondary contract with NCS, was in adequate, safe working condition. Crane's attempts to add a "another layer" of safety in addition to the obligations SSI willingly undertook do not make it liable for SSI's failure to protect its own employee, and Luna presents no evidence suggesting that Crane affirmatively directed or precluded SSI from doing anything it felt necessary with respect to the scaffolding.

Luna asserts that Wilson conceded that other subcontractors, including painters, framers, and electricians, would sometimes use the scaffolding. Luna suggests that this created a responsibility on Crane's behalf to ensure

12

that others used the scaffolding appropriately, but the testimony he relies on does not establish that Crane directed (or even allowed) the other trades to use the scaffolding. Nor does Luna provide any evidence suggesting SSI did not know about other crews using the scaffolding or that it had expressly approved such use. Crane agreed to provide all scaffolding required for its portion of the project, and to inspect and maintain the scaffold on a daily basis. The only agreement in the record regarding the scaffolding is between SSI and NCS. Trujillo testified that each trade spoke directly to NCS, the scaffold company, about accessing the scaffolding, and Luna admitted that SSI was aware that other trades were using the scaffolding. There is no evidence Crane had any involvement in dictating who else could use the scaffolding, or under what conditions.

Luna asserts that Crane and its employees sometimes either repaired the scaffolding themselves, or directed others to make repairs. For instance, Wilson's assistant, Alfredo Alvarez, testified that Wilson trained him to clip guardrails on the scaffolding back into place if he noticed they were loose. Wilson testified that the workers would sometimes leave only two planks, but it was preferable, safer, to have three, so on some occasions he asked the crew to replace planks that had been removed. Other times, if a plank was slightly askew, he would kick it or otherwise "move it back in." Or, if it was something simple, like replacing a brace or missing plank, he or his crew would make the repair, and make sure it was secure, in the interest of safety. If it was something that could not be easily remedied, Crane would put a red safety tag on it. Wilson reported issues with the scaffolding to Trujillo and they would discuss those issues "with the stucco guys" in the weekly safety meeting.

13

Reading the testimony in context, it is apparent that although Crane would at times repair or direct others to repair minor issues, SSI retained primary responsibility for the inspection and maintenance of the scaffolding. Despite making broad assertions about retained control, Luna points to no evidence suggesting that Crane affirmatively directed SSI to do anything with the scaffolding besides pointing out deficiencies that SSI or NCS needed to address, or that Crane otherwise interfered with SSI's ability to maintain and inspect the scaffolding as they saw fit for the safety of their own employees. To the contrary, Wilson repeatedly stated that "they were the professionals" and he would not tell them how to do their jobs.

Nor does Luna point to evidence suggesting that Crane's additional oversight or occasional fixing of planks or crossbars that were out of place affirmatively contributed to Luna's injury. Luna asserts that inspections of the scaffolding after the accident revealed deficiencies, including tripping hazards, such as misplaced and missing planks, and falling hazards, such as cross bars with broken locks, but these were all items that SSI should have seen itself in its daily inspections. Luna provides no evidence suggesting that a Crane employee repaired, or directed someone else to repair, the specific portion of the scaffolding where Luna fell. Even if Crane had replaced the crossbar, SSI still had a responsibility to inspect the scaffolding before Luna used it that day, to ensure that any such repairs were adequate.

Luna relies on *McKown* and *Brown*, but neither supports his contentions. In *McKown*, the California Supreme Court found there was an exception to *Privette* where the hirer, Wal-Mart, requested the contractor use its forklifts whenever possible, and then provided a defective forklift which led to McKown's injury. (*McKown, supra*, 27 Cal.4th at p. 223.) The key was that Wal-Mart negligently furnished unsafe equipment. (*Ibid*.) By contrast

14

here, Crane did not provide the scaffolding. Rather, SSI was directly responsible for obtaining and inspecting its own scaffolding.

In *Brown*, the court found there was a triable issue of material fact as to whether the general contractor, Beach House, retained control over scaffolding "in a manner that affirmatively contributed to plaintiff's injury." (*Brown, supra,* 85 Cal.App.5th at p. 534.) Beach House contracted directly with A&D to erect and maintain the scaffolding, but A&D was not on site for months at a time, and Beach House made no attempt to inspect it or ensure it was safe for other contractors to use. (*Id.* at p. 523.) The court explained, when "a general contractor contracts with a third party to supply equipment for the use of its subcontractors, the contractor's potential liability . . . turns on the extent of the contractor's delegation." (*Id.* at p. 530.) "If the general contractor fully delegates to the third party the duty to provide safe equipment, the third party is responsible for any failure to take reasonable precautions to keep the equipment in a safe condition. But if the general contractor does *not* fully delegate the task of providing safe equipment, it may be liable in tort to an employee." (*Ibid*.) Because the contract "did not clearly set forth who was responsible for inspecting and maintaining the scaffolding," there was a triable issue as to delegation. (*Id.* at p. 532.)

Here, the contract between Crane and SSI clearly stated SSI was to "inspect and maintain scaffold daily," and Luna admitted in his discovery responses that SSI "was required to inspect the scaffold before [he] used it." Accordingly, Luna has not established a triable issue of material fact regarding the extent of Crane's delegation of the responsibility for inspecting and maintaining the scaffolding.

15

## III.   DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.


KELETY, Acting P. J.

WE CONCUR:


CASTILLO, J.


RUBIN, J.

16